CHRISTINA GONZAGA (CSBN # 221187)
LAW OFFICES OF JAMES S. KNOPF
1840 Gateway Drive, Suite 200, San Mateo, CA 94404
Telephone: (650) 627-9595
Facsimile: (888) 715-9583

Attorney for
VEDATECH INC. and VEDATECH, K.K

MANI SUBRAMANIAN (PRO PER)
c/o LAW OFFICES OF JAMES S. KNOPF
1840 Gateway Drive, Suite 200, San Mateo, CA 94404
Telephone: (650) 627-9595
Facsimile: (888) 715-9583

## UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## (SAN JOSE DIVISION)

| | |
|---|---|
| QAD INC., a Delaware corporation, and QAD JAPAN K.K., a Japanese corporation, <br><br> Plaintiffs, <br> v. <br><br> MANI SUBRAMANIAN, an individual, VEDATECH INCORPORATED, a Washington corporation, and DOES 1 through 50, inclusive <br> Defendants <br> **Consolidated with:** <br><br> VEDATECH K.K., a Japanese corporation; MANI SUBRAMANIAN, an individual, <br><br> Plaintiffs and Counterdefendants <br><br> v. <br><br> QAD INC., a Delaware Corporation; QAD Japan K.K., a Japanese corporation, QAD Japan Inc., a Delaware Corporation; ARTHUR ANDERSEN LLP a limited partnership located in California JOHN DOORDAN, an individual; LAI FOON LEE, an individual; NOMURA RESEARCH HONG KONG Limited, a Hong Kong Company, NOMURA RESEARCH LTD, a Japanese corporation, and ISAO Takatori, an individual <br><br> Defendants and counterclaimants | Case No. <br><br><br> **NOTICE OF REMOVAL** <br> **28 U.S.C. § 1446** <br><br><br><br> Filing Date: May 04, 2004 <br><br> From the Superior Court for the State of California, Santa Clara County, <br> their Case Nos. CV 771638 (+ CV 784685 as consolidated into the lead case CV 771638) <br><br> **DEMAND FOR JURY TRIAL** |

[**NOTICE OF REMOVAL**] PLEASE TAKE NOTICE THAT defendants Mani Subramanian, Vedatech Inc. and Vedatech K.K.,[1] pursuant to 28 U.S.C. § 1446, hereby remove the above entitled action, CV 771638 in its entirety (including the consolidated action CV 784685 which was consolidated *into* the lead case CV 771638 for all purposes including trial on December 17, 2001 [see generally Exhibit-C, and in particular, pp.19-20 thereof],) from the Superior Court for the State of California, County of Santa Clara, to the United States District Court for the Northern District of California.

**DOCUMENTS TO BE FILED IN SUPPORT OF THIS NOTICE OF REMOVAL**

This Notice of Removal is supported by Exhibits to be filed as soon as possible:

**EXHIBIT A**:    **Legal Brief** outlining points and authorities in support of the Notice of Removal <to be filed later as necessary);

**EXHIBIT B**:    Copy of **Processes, Pleadings, and Orders** served on the defendants as required by 28 U.S.C § 1446(a);

**EXHIBIT C**:    Evidence of State Court actions regarding **Consolidation** of the second case CV 784685 into the first LEAD case CV 771638;

**EXHIBIT D**:    Evidence of efforts by Defendants to get **information regarding the Complaint through demurrers** in State Court;

**EXHIBIT E**:    Chronology of efforts to get **information about the Complaint through Interrogatories**;

**EXHIBIT F**:    Chronology of efforts to get **information about the Complaint through Demands for Inspection /Production of Documents**;

**EXHIBIT G**:    **Miscellaneous Documents** and other supporting material;

**EXHIBIT H**:    **Documents** relating to prior removal of this case.

---

[1]    Vedatech K.K. in the consolidated case should be considered properly as a defendant as explained below in the section regarding realignment of the parties.

**ORIGINAL CASE No. CV 771638**

1.     The original Complaint in this action is to be found at <u>Exhibit B, Tab-1</u> attached to this Notice of Removal.  This document shall be referred to herein as the "COMPLAINT" or "Complaint".  **[Please note that the first few pages of Exhibit B, at Tab-1 are the summons, *and* the Complaint follows in Exhibit B itself within Tab-1.]**

2.     On January 26 1998, Plaintiffs in this action, QAD Inc., a Delaware corporation and QAD Japan K.K. a Japanese corporation, filed their complaint in this action captioned <u>QAD Inc. and QAD Japan K.K. v. Mani  Subramanian, Vedatech Inc. and DOES  1 through 50</u>  as CV 771638 in the Superior Court. (<u>Exhibit B, Tab-1, p.1</u>.)

**The PARTIES to the original case CV 771638 (the LEAD Case)**

3.     Plaintiff QAD Inc. is a Delaware corporation with principal place of business in Carpinteria, California. (<u>Complaint at Exhibit B, Tab-1, ¶1 @ p.2, lines 3-6</u>.)

4.     Plaintiffs QAD Japan K.K. is a Japanese corporation with principal place of business in Yokohama, Japan. (<u>Complaint at Exhibit B, Tab-1, ¶2 @ p.2, lines 11-15</u>.)

5.     Defendant Subramanian is a United States citizen and a resident of the State of Washington.[2]

6.     Defendant Vedatech Inc. is a Washington State Corporation with principal place of business in the State of Washington. (<u>Exhibit B, Tab-1, ¶4 @ p.2 lines 24-28</u>.)

7.     Defendant Vedatech K.K. is a Japanese corporation with its principal place of business in Yokohama, Japan. (see <u>footnote 1 above</u> regarding the status of Vedatech K.K. as a defendant and the need for realignment of the parties.)

---

[2]     QAD Parties, in their Complaint filed in Jan 1998 "allege[], that SUBRAMANIAN currently resides in the country of Japan, but that he makes, and at various times relevant to the matters set forth in this action has made, repeated trips to the State of California in connection with the matters set forth herein and for other purposes." (<u>Complaint at Exhibit B, Tab-1, ¶3 @ p.2, lines 17-22</u>.)

**Initial Progress of this LEAD Case**

8.     Vedatech Inc. was served in June 1998.  Subramanian was never served formally but stipulated to a waiver of process in April 2000.

9.     Vedatech Inc., removed this case on the basis of complete diversity in June 1998 to the Federal District Court in San Jose, where it proceeded as C-98-cv-20792 SW.  (Removal papers at Exhibit B, Tab-5.)

10.     Defendant Vedatech Inc. applied for dismissal on the basis of lack of personal jurisdiction.  This order was denied in Mar 2000. (Order at Exhibit B, Tab-11.)

**Tender to the insurance company St.Paul**

11.     Vedatech Inc. tendered defense of these claims to St.Paul Fire and Marine Insurance company (St.Paul) in early 1999.[3]  St.Paul, rather than defend the case, chose to do a severe "reservation of rights", and instead offered to partially pay for attorneys already chosen or employed independently by Vedatech Inc and/or Subramanian.

**Relevance of the insurer St.Paul**

12.     St.Paul, while claiming to be the insurer for Vedatech parties, concurrently initiated a declaratory action in Feb 2002 in the Superior Court for Santa Clara county as Case No. 805197.  In May 2002, prior attorneys for Vedatech Parties, withdrew from this QAD action because of non-payment of defense costs by St.Paul.  In June 2002, Subramanian, without the benefit of counsel removed the St.Paul insurance (declaratory relief) action to Federal Court under Case No. C-02-03061-JF.  Vedatech corporate parties were not represented by counsel at that time, not in the least because of non-payment of defense costs in the QAD litigation by St.Paul.  Subramanian was told repeatedly in this period (around June/July 2002) by St.Paul's and QAD's attorneys that he could not represent the corporate parties in Court.  Thus, Subramanian did not

---

[3]     The designation "St.Paul" will be used to denote both St.Paul and its wholly owned subsidiary United States Fidelity and Guaranty Co., both of whom are insurers of Vedatech Parties.

explicitly plead joinder of the Vedatech corporate parties in the Notice of Removal. Because of that error, in that Vedatech K.K. was not joined, this insurance case [formerly C-02-03061 JF] was remanded back to the State Court.

### CURRENT Removal of the insurance case, CV 805197 to Federal Court

13.     On Friday, April 9, 2004, this insurance case was removed on the basis of federal jurisdiction on grounds related to those outlined here, and assigned Case No. C-04-01403 SC.  A related case Notice has been filed referring to this case and it is hoped that this insurance case would be transferred to be considered along with this case.

## REAL PARTY IN INTEREST – VEDATECH K.K., the Japanese corporation

14.     There is attached as an exhibit to the Complaint itself, an agreement between Vedatech Corporation and QAD Inc., dated March 24, 1994 (in Bali, Indonesia). (Complaint, Exhibit B of this Amended Notice of Removal, Tab-1, ¶11 @ p.5, lines 15-22, and "exhibit A" of the Complaint itself after p.21 of the Complaint.)  This agreement, as can be seen clearly from the document itself, is with the Japanese corporation, "Vedatech Corporation" and signed by Karl Lopker, the CEO of QAD Inc, of California.[4]

15.     The Japanese corporation, Vedatech Corporation is known in Japanese as Vedatech Kabushiki Kaisha, also denoted as Vedatech K.K.

### Problems with the defense for Vedatech Inc.

16.     Vedatech Inc. had asserted in its defense that it was the wrong party to be sued on the relationship with QAD Inc.  On the other hand, QAD Inc., beginning for the first time in its opposition papers to Vedatech Inc.'s motion for dismissal, alleged an

---

[4]     It is true that Vedatech Inc., the Washington State Corporation was initially incorporated as Vedatech Corporation in March 1994 and in late 1996 changed its name to Vedatech Inc., to prevent confusion in the names.  But QAD Inc. was not belaboring under any such misapprehension as it sued Vedatech K.K. under its proper legal Japanese name (Vedatech Kabushiki Kaisha) in Japan in October 1997, well before it initiated proceedings in California. The choice of Vedatech Inc., the Washington Corporation was a clear attempt at forum shopping by QAD Inc, and a strategic / tactical move by QAD.

"alter ego" relationship between the Vedatech entities and Subramanian. Thus, if Vedatech Inc. could not assert the defenses that belonged to Vedatech K.K. but was exposed to the liabilities of Vedatech K.K. through the alter ego allegations. The only way out was for Vedatech K.K. to intervene in the action in one way or another.

**Problems with Joinder of Vedatech K.K.**

17. In mid-1999, when Vedatech Inc. lost its motion for dismissal for lack of personal jurisdiction, Vedatech K.K. had a choice of (A) applying for intervention in the ongoing federal case as the true defendant, *or* (B) initiating new proceedings in federal court and then applying for consolidation and realignment of parties. Several problems arose at this time that forced the decision not to pursue either of these options.

18. The law firm of Bogle and Gates of Seattle, Washington, that was representing Vedatech Inc., collapsed in 1999 because of the partial takeover of much of the practice by a rival out-of-state firm Dorsey and Whitney. The firm of Morrison and Foerster that took over from Bogle and Gates could not continue support for very long because St.Paul (the insurance company) was not paying the legal costs of the defense in full. There was also an additional serious concern (mistaken it would seem now) that the residence of Subramanian in Japan may defeat diversity jurisdiction.

**NEW ACTION PERMITTING VEDATECH K.K. TO ASSERT COUNTERCLAIMS**

19. For all of these reasons, Vedatech K.K. commenced new proceedings under Case No. CV 784685 in the Superior Court for Santa Clara County in September 1999. The complaint in these second proceedings shall be referred to as the "VTKK-Complaint". (See Original VTKK-Complaint at Exhibit B, Tab-19.) The further amendments to this complaint (in response to various State Court demurrers by other parties,) are to be found at, VTKK-First-Amended at Exhibit B, Tab-20, and VTKK-Second Amended at Exhibit B, Tab-76, and VTKK-Third-Amended at Exhibit B, Tab-90.

**Third-parties jointly responsible with QAD added to Vedatech K.K.'s claims**

20.     In order to properly assert its claims (counterclaims) against QAD Inc. and QAD Japan K.K., Vedatech K.K. joined other parties, all of whom are aligned with QAD Inc. and are either executives of QAD Inc., former executives of QAD Inc., or other parties that worked in collusion with QAD Inc.  The identity of these third-party defendants are described below.

**Third-party joint tortfeasor (counterdefendant) QAD Japan Inc.**

21.     QAD Japan Inc., is a Delaware corporation with principal place of business in Tokyo, Japan (or Carpinteria, California, if it is considered to be an alter ego of QAD Inc.)

22.     QAD Japan Inc. is a decoy company specifically set up in or around August 1997 to steal business away from QAD Japan K.K. by using a name similar to QAD Japan K.K.  This company QAD Japan Inc. was used in QAD Inc.'s efforts to force Subramanian to resign from QAD Japan K.K., to starve QAD Japan K.K. of funds and to direct customers away from QAD Japan K.K. and Vedatech K.K.

23.     It is believed that QAD Japan K.K. is dormant and QAD Inc. operated (and continues to operate) in Japan now exclusively through this decoy company.

**Third-party joint tortfeasor (counterdefendant) Arthur Andersen**

24.     Arthur Andersen LLP is an Illinois partnership with principal place of business in Chicago, Illinois.

**Third-party joint tortfeasor (counterdefendant) John Doordan**

25.     John Doordan is an executive of QAD Inc. and a citizen of California.

**Third-party joint tortfeasor (counterdefenant) Lai Foon Lee**

26.     Lai Foon Lee, an executive of QAD Inc., and a citizen of California at the time of commencement of the Vedatech K.K. proceedings, is now no longer with QAD Inc., and, from information and belief, is a citizen of Connecticut.

### Third-party joint tortfeasor (counterdefendant) NRI-HKG

27.    Nomura Research Institute, Hong Kong Limited, ("NRI-HKG") is a Hong Kong company with principal place of business in Hong Kong, People's Republic of China.  NRI-HKG was properly served but dismissed by the State Court as a result of their motion to dismiss for lack of personal jurisdiction.

### Third-party joint tortfeasor (counterdefendant) NRI-JAPAN

28.    Nomura Research Institute Limited, ("NRI-JAPAN") is a Japanese corporation with principal place of business in Tokyo, Japan.  NRI-JAPAN has not been served as of this date.

### Third-party joint tortfeasor (counterdefendant) Isao Takatori

29.    Isao Takatori, the former president of NRI-HKG, is a Japanese citizen, currently believed to be a resident of Japan.  Takatori has not been served as of this date.

### Real position of Arthur Andersen

30.    Arthur Andersen LLP, subsequent to their prosecution by the U.S. government, operates as a shell company with almost no assets and a skeleton operation out of Chicago.  Its participation in the litigation at this point is limited to supporting QAD's positions on most matters.

### The nature of Vedatech parties' claims against these third-parties

31.    Vedatech parties have asserted various defenses and counterclaims against Plaintiffs QAD Inc. and QAD Japan K.K.  It is Vedatech parties' contention that all of these third-parties are jointly responsible with QAD Inc. and QAD Japan K.K. for the matters alleged in the counterclaims against the main QAD parties.  None of these third-parties have asserted any claims against the Vedatech parties.  QAD Japan Inc., John Doordan, and Lai Foon Lee are all represented by the same counsel as QAD Inc., viz. Mr William Connell.  Arthur Andersen LLP's interests are aligned with that of QAD.  NRI-HKG and NRI-Japan and Takatori are also aligned with QAD Inc.

**DECEMBER 1999 REMOVAL OF THE SECOND ACTION TO FEDERAL COURT**

32.     On December 23, 1999, Mr Connell, attorney for QAD Inc. and QAD Japan K.K., purportedly acting only on behalf of QAD Japan Inc. (the decoy company) removed the second action to Federal Court where it proceeded briefly as C-99-21241 SW.  (Removal Papers at Exhibit B, Tab-22.)

### The "counterclaims" of QAD Inc. and QAD Japan K.K.

33.     QAD Inc. and QAD Japan K.K., on Mar 8, 2000, answered in Federal Court in the second action, CV 784685.  (Answer at Exhibit B, Tabs-26,30.)  In addition, QAD Inc. and QAD Japan K.K., the original plaintiffs in the first action, also filed counterclaims in this second action. These counterclaims of QAD parties are "cut and pasted" from the claims in the first case, and identical for all practical purposes to their claims in the original action in CV 771638.  (Counterclaims at Exhibit B, Tab-32.)  The important changes are the "alter ego" allegations in *id*, ¶6 @ p.3, lines 8-28; p.4, lines 1-8, and the concession that the March 1994 agreement was with Vedatech K.K., albeit phrased as being with "Vedatech Corporation", *id*, ¶11 @ p.5, lines 21-25.  QAD Inc. and QAD Japan K.K. allege in these counterclaims that Vedatech Inc., Vedatech K.K. and Mani Subramanian are all "alter egos" of each other, "justifying liability of each, to wit, SUBRAMANIAN, VEDATECH K.K., and Vedatech Incorporated, for the obligations of the others, *id*, ¶6 @ p.4, lines 6-8.

34.     With a minor change in paragraph numbering because of the additional paragraph with alter-ego allegations, the so-called counterclaims are nothing but QAD Inc. and QAD Japan K.K.'s original claims in the first (LEAD) case, with the inevitable acknowledgment through the back door, that they had sued the wrong company, and that they *should have* sued Vedatech K.K. as the defendant in the first place.

### The "first-amended cross-complaint" of QAD Inc. and QAD Japan K.K.

35.     In August 2000, Vedatech K.K and Subramanian demurred to the "counterclaims" of QAD Inc. and QAD Japan K.K. in the second case, CV 784685.  In

response to this demurrer, QAD Parties amended their "counterclaims" as a matter of course /right on August 31, 2001.  This "First-Amended Cross-Complaint" no longer named Subramanian as a defendant, since QAD Parties had already asserted all of their claims against Subramanian in the LEAD case.   (see First-Amended Cross-Complaint of QAD Inc. and QAD Japan K.K. at Exhibit B, Tab-53.)

36.     It is to be noted that all of this confusion was created primarily because of QAD's tactical choice of suing the wrong company, the Washington State affiliate in order to make it easier for them to have a United States forum (as opposed to Japan).

**REMAND OF BOTH ACTIONS BACK TO STATE COURT**

37.     Partly because of the confusion over the matter of the residence /domicile of Subramanian, there was a cloud over the diversity jurisdiction for both cases. Although no Judicial decision was made on the merits of this matter (i.e. no findings of fact or law relating to this point), because of the concern expressed by the Court about the unwelcome possibility of proceeding without subject matter jurisdiction, the legal team for both sides stipulated to a remand of both cases back to State Court.  (see Stipulation and Order regarding Remand at Exhibit B, Tabs-36,37,38.)

**CONSOLIDATION OF BOTH CASES IN STATE COURT INTO CV 771638**

38.     After remand, both sides utilized the State Court procedure of demurrers to challenge the pleadings of the other side.  These demurrers led the Honorable Judge Rushing, upon the Court's own motion to issue a show cause order as to why the two cases should not be consolidated.  (see Exhibit D, p.11, lines 22-25; p.12, lines 1-5;  p.15, line 28; p.16, lines 1-15;  p.18 first three lines at the top;  and **ORDER** at pp.19-20.)  The Court's observations clearly set out the reasons why Vedatech Inc. and Vedatech K.K. are really the true defendants and that "**the liability of each entity individually, and the liability of each for the acts of the other or those of Mr Subramanian, if any, are factual matters to be sorted out by trial on by other factual proceeding**."

## RE-ALIGNMENT OF THE PARTIES

39.      As the observation of the Honorable Judge Rushing clearly indicates from the above references to Exhibit-C, it is clear that QAD Inc. and QAD Japan K.K. acknowledge that they entered into a contract with Vedatech K.K. (i.e. "Vedatech Corporation").  Their tactical decision to sue the Washington Corporation Vedatech Inc. in order to avoid having to litigate this matter in Japan cannot hide the fact that the true defendant is Vedatech K.K. and was always Vedatech K.K.  In addition, QAD premises its claims on an *alter ego* allegation between Vedatech K.K., Vedatech Inc., and Mani Subramanian, clearly putting them all on one side of the dispute.

40.      The parties need to be lined up so that Vedatech Inc., Vedatech K.K. and Mani Subramanian are on one side as proper defendants to the LEAD case into which the second case has been consolidated.  QAD Inc. and QAD Japan K.K. are the original and proper plaintiffs.  The other parties are third-party defendants that Vedatech parties brought in to be on the side of QAD and as co-conspirators or joint tortfeasors.  All of the parties named by Vedatech K.K. are adverse to the Vedatech parties and none of them are adverse to the QAD parties.

41.      It is well established the District Court will realign parties before looking at who the "defendants" are and who the real "plaintiffs" are.  At the time of removal (March 15, 2004), and for some time before that, complete diversity exists between all of the true defendants (Vedatech Inc., Vedatech K.K. and Mani Subramanian) and all of the true plaintiffs (QAD Inc., QAD Japan K.K.) and third-parties aligned with QAD (QAD Japan Inc., John Doordan, Lai Foon Lee, Isao Takatori, Arthur Andersen LLP, NRI-HKG, and NRI-Japan).  Although this removal is not based on that, there is original jurisdiction in that sense even if the federal claims were to drop off after the establishment of subject matter jurisdiction on the matter of federal question (e.g. the post-removal attempts by QAD to defeat federal jurisdiction by dismissing all claims in collusion with St.Paul the insurer), the Court can still exercise jurisdiction on that basis

42. **THE CURRENT LINE UP OF THE PARTIES IS:**



*LEAD Case*

PLAINTIFFS

QAD Inc.
QAD Japan K.K.

DEFENDANTS

Vedatech Inc.
Mani Subramanian.

Vedatech K.K.
Mani Subramanian.

QAD Inc.
QAD Japan K.K.

+
QAD Japan Inc.
Arthur Andersen LLP
John Doordan
Lai Foon Lee
NRI Hong Kong Limited
NRI Limited Japan
Isao Takatori

*Second Case Consolidated INTO the LEAD Case*

43. **AFTER REALIGNMENT OF THE PARTIES:**

**TRUE POSITION IN THE CONSOLIDATED CASE**



PLAINTIFFS

QAD Inc.
QAD Japan K.K.

DEFENDANTS

Vedatech K.K.
Vedatech Inc.
Mani Subramanian.

**+ THIRD-PARTIES**

QAD Japan Inc.
Arthur Andersen LLP
John Doordan
Lai Foon Lee
NRI Hong Kong Limited
NRI Limited Japan
Isao Takatori

**QAD'S COMPLAINT AND THE ISSUE OF "INTELLECTUAL PROPERTY"**

44.  Para.7 of the Complaint (and Para.6 of the First-Amended Cross-Complaint) states the following regarding QAD Inc., (Exhibit B, Tab-1 and Tab-53):

```
The principal business of QAD-USA is the
development and marketing of Enterprise Resource
Planning software for multinational and other
large manufacturing companies.
```

45.  Para.8 of the Complaint (and para.7 of the First-Amended Cross-Complaint) alleges the purpose behind establishing QAD Japan K.K., *id*:

```
[...] QAD-USA has established [...] QAD-Japan
[...] [to assist] QAD in working with local
alliance partners to translate and otherwise
adapt the software for local use, [...].
```

46.  Para.10 of the Complaint (and para.9 of the First-Amended Cross-Complaint) alleges the role of QAD Japan K.K. to be as follows, *id*:

```
QAD-USA formed QAD-Japan: [...] (2) to supervise
customization efforts by third-parties enabling
Japanese businesses, as well as businesses from
other countries with operations in Japan, to
utilize QAD software; and (3) to undertake
various other functions related to the
customization, localization, and utilization of
QAD software in Japan. 5  QAD-Japan was
```

---

[5]  The term "localization" is used in the software industry to denote modifying software to make it specifically tailored to a local market.  Although it has come to mean country-specific translations, (albeit including complex analysis of local market requirements), Vedatech undertook the tasks of translation, modification (customization), addition of features and modules, and other adaptations to the QAD software in order to make it more useful for customers in Japan.  For a definition of "localization" not including the acts of "customization" or "addition of functional modules", please see http://www.lisa.org [the Localization Industry Standards Association,] or please see http://www.visloc.com/downloads/Softwarelocalization_with_VisualLocalize.pdf or, for example the website, http://www.bowneglobal.com/english/sol_ls_1.htm

established to be the sole licensor of QAD
software source code in Japan and, subject to the
review and approval of QAD-USA, to enter into
relationships with third parties to act as
"Approved Implementation Partners" to distribute
and support QAD's software products in Japan.

47.  Para.11 of the Complaint (and para.10 of the First-Amended Cross-Complaint) of QAD Inc. continues, *id*:

[...] QAD-USA entered into a relationship with
defendants VEDATECH ["Vedatech Corporation"] and
SUBRAMANIAN, under which, among other things,
VEDATECH ["Vedatech Corporation"] and SUBRAMANIAN
were to perform various services in connection
with the setting up and initial operation of QAD-
Japan [...].

48.  Para.21 of the Complaint (and para.20 of the First-Amended Cross-Complaint) of QAD Inc. alleges various actions that relate to the issue of the "intellectual property" and actions alleged to involve such "intellectual property", *id*:

[...]

(L) On behalf of VEDATECH, improperly asserting
ownership to various intellectual property of QAD
[QAD-USA], including, but not necessarily limited
to, certain computer software, for which QAD
[Cross-Complainants,] at SUBRAMANIAN's direction,
paid VEDATECH ["Vedatech Corporation"].

prior subparagraphs that are related to this allegation regarding intellectual property are:

(H)Dissemination of false and misleading
information regarding QAD [Cross-Complainants,
and each of them,] resulting in substantial

disruption of QAD's relationships with such
customers and prospective customers;

(I) Dissemination of unauthorized invoices, as
well as false and improper instructions, to
various QAD customers [customers of Cross-
Complainants, and each of them,] regarding
payment of QAD Invoices [Invoices from Cross-
Complainants, and each of them,] resulting in
substantial disruption of QAD's [Cross-
Complainants', and each of their,] relationships
with such customers;

(J) Improper interference with efforts by duly
authorized QAD [QAD-USA] personnel to participate
in duly authorized activities involving QAD-
Japan;

(K) Improper interference with efforts by QAD
[QAD-USA] personnel to provide support to certain
QAD customers [customer of Cross-Complainants,
and each of them,] in order to benefit VEDATECH;
and [...]

[...]

**QAD'S COMPLAINT AND THE ALLEGATIONS REGARDING THE
CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES**

49.    <u>Para.11 of the Complaint (and para.10 of the First-Amended Cross-
Complaint)</u> of QAD Inc. incorporates the attachment (Exh-A of the Complaint / First-
Amended Cross-Complaint itself) into the Complaint and describes the formation of the
contractual relationship as follows, *id*:

On or about March 24, 1994, pursuant to an
agreement containing the terms set forth in
Exhibit A to this complaint ("March 24, 1994
agreement") [...]

50.     Para.16 of the Complaint (and para.15 of the First-Amended Cross-Complaint) of QAD Inc. alleges oral extensions of the original March 24, 1994 written agreement as follows, *id*:

```
[...] In or about March, 1995, toward the end of
the one-year period set forth in the March 24,
1994 Agreement, QAD-USA, SUBRAMANIAN and VEDATECH
[Vedatech Corporation] mutually determined to
continue the arrangement under which SUBRAMANIAN
served as Representative Director and an interm
President of QAD-Japan.  [...]
```

51.     Para.19 of the Complaint (and para.18 of the First-Amended Cross-Complaint) of QAD Inc. alleges termination of the relationship with SUBRAMANIAN as follows, *id*:

```
[...] on or about April, 1997, QAD-USA served
VEDATECH [SUBRAMANIAN and "Vedatech Corporation"]
with written notice terminationg QAD-Japan's
relationship with SUBRAMANIAN, effective July 31,
1997.  A true and correct copy of this notice is
attached to this complaint [Cross-Complaint] as
Exhibit B and incorporated in full by this
reference.  The terms set forth in the notice
were based on, and consistent with, the
termination provision expressly set forth in the
March 24, 1994 Agreement.
```

52.     Although the above paragraphs do not allege termination of the March 24, 1994 Agreement itself, this is evident from Exhibit B of the Complaint [Cross-Complaint] of QAD, which is incorporated by reference into the Complaint [Cross-Complaint].  Herein the attempted termination by QAD Inc. through the letter written by John Doordan are set out as follows, *id, Exhibit B of the Complaint [Cross-Complaint]*:

```
[...] On behalf of QAD Inc., and QAD Japan K.K.,
I advise you and the Vedatech group that our
contract of March 24, 1994 is hereby terminated.
```

## QAD'S "PRAYER FOR RELIEF" RELATING TO AND SPECIFIC TO THE ALLEGATIONS REGARDING "INTELLECTUAL PROPERTY"

53.     Although all of the relief claimed in one way or another relates to the allegations regarding the "intellectual property" the more specific of these with respect to copyright related remedies are alleged in the "Prayer for Relief" sections, (Exhibit B, Complaint, Tab-1, at pp.20-21, and Exhibit B, First-Amended Cross-Complaint, Tab-53, at pp.21-23:

```
    [...]

 D. For a temporary restraining order, a preliminary
    injunction and a permanent injunction, all of
    which enjoin defendants, and each of them, and
    their agents, emploees, officers, directors, or
    anyone acting under their authority or control:

    (1)  From taking, or continuing to take, any
         action that interferes with QAD's right and
         ability to access [...] any property
         belonging to, on in the name of, QAD-USA or
         QAD-Japan, including but not limited to,
         software, equipment, [...], books and
         records, etc.;

    (2)  [...]

    (3)  From interfering in any manner with efforts
         by QAD to obtain payment from past, present,
         or potential future customers;
```

(4)  To return to QAD-Japan any and all
              equipment, property, [...] equipment,
              software, etc.;

        E.  For an accounting and restitution of all
              amounts by which defendants, and each of
              them, have been unjustly enriched;

    F. For costs of suit incurred herein, including
        reasonable attorney's fees as allowed by law;
        and,

    G. For such other and further relief as this Court
        deems just and proper.

        [...]

**The difficulty with analyzing the "artfully pleaded" QAD Complaint**

        54.    It is not clear from the Complaint whether the "software" that QAD refers

to includes the "localized" or Japanized software which VEDATECH developed for the

Japanese market, based on the original software from QAD, called MFG/PRO

(Para.21(L) [20(:L)] of the Complaint [First-Amended Cross-Complaint] only refer to

"certain computer software".)  It is also not clear what QAD means by referring to this as

"property".  It is uncertain when "software" is referred to simply as a "property" or even

"intellectual property":  is it the actual computer on which it might be stored, a storage

device such as a hard disk in which this might be stored, a reel of magnetic tape on which

it might be stored, etc.  Thus, QAD avoided having to raise an issue relating to copyrights

(i.e. statutory prescriptions specifically outlining rights and remedies) by artfully pleading

issues relating to the same as "ownership" of the property called "certain software".

Since QAD bundles these requests with the demand for the return of "equipment" etc,

which presumably are the computers and storage devices that might contain the software

code or modules, it is not entirely clear what the scope of the Complaint is or what issues need to be resolved to provide relief to QAD.

55.     It is clear though that the issue of the "computer software" is linked to the matter of the "intellectual property" in para.21(L) [20(L)] of the Complaint [First-Amended Cross-Complaint].  What is not clear is the specific attribute of this "property" that is necessary for the resolution of QAD's claims and associated remedies demanded by QAD in its Complaint [First-Amended Cross-Complaint].

**The differences between the Complaint and the First-Amended Cross-Complaint**

56.     The only substantive material distinction between the Complaint (Exhibit B, Tab-1,) and the First-Amended Cross-Complaint (Exhibit B, Tab-53,) is that QAD finally admitted that it should have sued Vedatech K.K. the Japanese corporation.[6]   Of course, in addition, to overcome the problems caused by its suing the wrong party in the LEAD case, QAD now alleges "alter ego" status between Vedatech Inc., the Washington corporation, Vedatech K.K., the Japanese corporation that it knew it contracted with, and Mani Subramanian, the principal in both of these corporations.  Additionally, the Complaint asserts as "Breach of Fiduciary Duty" as the Sixth Cause of action against SUBRAMANIAN ("cut and pasted" into the Counterclaims of QAD dated Mar 2000, Exhibit B, Tab-32.)   But the First Amended Cross-Complaint of QAD drops Subramanian as a defendant and substitutes "Breach of Contract" as the Sixth Cause of Action against, it would seem against both Vedatech K.K. and SUBRAMANIAN.  This is an admission by QAD that it sued the wrong party in the LEAD case.  The "alter ego" allegations in the First Amended Counterclaim ensure that both Vedatech Inc., and

---

[6]     As noted earlier, there is certainly an argument that could be made because of the historical name changes in the corporate names for the Washington corporation, but QAD [and Vedatech's insurer St.Paul for that matter] clearly knew about the Japanese corporation and the correct naming conventions, and its purported reliance on such a confusion is clearly disingenuous and insincere.

Vedatech K.K. are potentially liable on all causes of action. Accordingly, if the realignment of the parties is accomplished as respectfully submitted above, then the First-Amended Cross-Complaint can be treated as the Amended Complaint in the consolidated single action and no other pleadings are necessary. Similarly the pleadings of Vedatech K.K. (called the Third Amended Complaint) are properly treated as Vedatech K.K.'s Third-Amended *Counterclaims.* The role of Subramanian in both cases are merged as there is no material difference between the allegations regarding SUBRAMANIAN in both except for the "alter ego" status alleged in the First Amended Cross-Complaint.

**DIRECT IMPACT OF THE ABOVE ALLEGATIONS REGARDING "INTELLECTUCAL PROPERTY", ON THE VARIOUS CAUSES OF ACTION ALLEGED IN THE COMPLAINT [FIRST-AMENDED CROSS-COMPLAINT]**

57.    QAD's Complaint is not well-pleaded. Furthermore, VEDATECH defendants contend that most of what is alleged therein is false. Notwithstanding that, and perhaps because of that, QAD parties have resorted to "artful pleading" and a good dose of fudging in order to state various causes of action in the Complaint [First-Amended Cross-Complaint]. Various facts are clearly alleged with respect to actions regarding unspecified "intellectual property" and the impact of the issues of "intellectual property" on the various causes of action is also stated very clearly:[7] QAD, although the "master of the complaint" has through "artful pleading" fudged the various issues to create an impression of extensive wrongdoing by defendants VEDATECH and SUBRAMANIAN. As alleged in the Complaint and the First-Amended Cross-

_____

[7]    As detailed below, the subsequent discovery clearly showed the importance to QAD of the issue of the "intellectual property", essentially the ownership of the source code of the "localized" software that was developed by VEDATECH [i.e software based on the QAD's MFG/PRO software but with additions and customizations and translations and "localizations" developed by VEDATECH, the author of such additions and localizations]. VEDATECH claimed and claims copyrights in this software and QAD disputes that. With QAD's clarification for the first time on March 10, 2004 (received on March 11, 2004), the resolution of that dispute has become central to the resolution of the various causes of action in QAD's Complaint [First-Amended Cross-Complaint].

Complaint, all of the causes of action to varying degrees of clarity state claims based on the alleged acts regarding "intellectual property". A rough ordering of the degree of inclusion of the issues regarding "intellectual property" is provided below, although given the vagueness of the allegations, it is sometimes quite hard to pin down what it is that QAD is alleging: (1) Unfair Competition, (2) Trade Libel / Disparagement of Goods and Quality, (3) Intentional interference with Contractual Relations, (4) Intentional Interference with Prospective Economic Advantage, (5) [*Complaint only*] Breach of Fiduciary Duty (6) [*Amended Cross-Complant only*] Breach of Contract and (7) Fraud.

### THE FIRST CAUSE OF ACTION FOR "FRAUD"

58.    Paras.22-24 of the Complaint (paras.21-23 of the First-Amended Cross-Complaint) of QAD Inc. pleads the cause of action for Fraud. The relevant passages are:

        22. [21.] Plaintiffs [Cross-Complainants]
        reallege and incorporate herein as if set forth
        in full the allegations of paragraphs 1 through
        **21 [20]**, of this Complaint [these [sic]
        Counterclaims].

        23. [22.] Plaintiffs [Cross-Complainants] are
        informed and believe, and thereon allege, that
        certain of the acts and conduct of defendants
        SUBRAMANIAN, VEDATECH ,and DOES 1 through 50,
        inclusive [Cross-Defendants, and each of them,]
        as more specifically alleged in paragraphs 18,
        20, **and 21**, [17, 19, **and 20**,] inclusive,
        constituted or were based on affirmative
        misrepresentations by said defendants to QAD
        [Cross-Complainants,and each of them] or, in the
        alternative, were intentionally and fraudulently
        concealed from QAD [Cross-Complainants] by said
        defendants [Cross-Defendants, and each of them]
        [...]

59.    This is not exactly a model pleading for fraud.  Nevertheless, it is clear that QAD is alleging that the representations regarding "improperly asserting ownership to various intellectual property of QAD" was an "affirmative misrepresentation" or were "intentionally and fraudulently concealed from QAD" [actionable non-disclosure?]

60.    Since QAD has not, in spite of repeated efforts clarified what these specific fraudulent statements are, one has to assume that it includes VEDATECH's assertions of ownership of the localized computer software.

**THE SECOND CAUSE OF ACTION FOR "UNFAIR COMPETITION"**

61.    <u>Paras.25-27 of the Complaint (paras.24-26 of the First-Amended Cross-Complaint)</u> of QAD Inc. pleads QAD's cause of action for Unfair Competition under the California B&P Code §§ 17200 et seq.  The relevant passages are:

```
25. [24.] Plaintiffs [Cross-Complainants]
reallege and incorporate herein as if set forth
in full the allegations of paragraphs 1 through
24 [23], of this Complaint [Cross-Complaint].

26. [25.] The actions taken by SUBRAMANIAN,
VEDATECH, and defendants DOE 1 through 50,
inclusive, [Cross-defendants, and each of them,]
as set forth herein, constitute unfair
competition and unlawful, unfair or fraudulent
business practices proscribed by Section 17200,
et seq., of the California Business & Professions
Code.

[...]
```

62.    Given the breadth of the California Unfair Competition Law ("UCL") it is obvious that the allegations regarding intellectual property (i.e. at least paras. 21 [20] (L), (H), (I), (J), and (K) of the Complaint [First Amended Cross-Complaint] are included in QAD's claims for relief under this cause of action.

**THE THIRD CAUSE OF ACTION FOR "INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS"**

63. <u>Paras.28-31 of the Complaint (paras.27-30 of the First-Amended Cross-Complaint)</u> of QAD Inc. pleads QAD's cause of action for "intentional interference with contractual relationships". The relevant passages are:

> 28. [27.] Plaintiffs [Cross-Complainants]
> reallege and incorporate herein as if set forth
> in full the allegations of paragraphs 1 through
> **27 [26]**, of this Complaint [Cross-Complaint].

> 29. [28.] [...] By virtue and as a proximate
> result of the actions of defendants [Cross-
> Defendants, and each of them,] as set forth
> herein, the contractual relationships between QAD
> [QAD-USA and/or QAD-Japan] and the aforementioned
> companies have been disrupted, resulting in
> damage to QAD [Cross-Complainants] in an amount
> according to proof at trial, but which QAD is
> [Cross-Complainants are] informed and believes,
> and thereon alleges [allege] is in excess of
> $75,000, exclusive of interest and costs.

> [...]

64. In this case also it is obvious that the allegations regarding intellectual property (i.e. at least paras. 21 [20] (L), (H), (I), (J), and (K) of the Complaint [First Amended Cross-Complaint] are critical for the resolution of QAD's claims for relief under this cause of action.

**THE FOURTH CAUSE OF ACTION FOR "TRADE LIBEL AND DISPARAGEMENT OF GOODS AND QUALITY"**

65. <u>Paras.32-37 of the Complaint (paras.31-36 of the First-Amended Cross-Complaint)</u> of QAD Inc. pleads QAD's cause of action for "intentional interference with contractual relationships". The relevant passages are:

32. [31.] Plaintiffs [Cross-Complainants] reallege and incorporate herein as if set forth in full the allegations of paragraphs 1 through **31 [30]**, of this Complaint [Cross-Complaint].

33. [32.] Since at least October, 1997, and continuing through the present [thereafter], defendants SUBRAMANIAN, VEDATECH, and DOES 1 through 50, inclusive, [Cross-Defendants, and each of them,] has [have] made statements and remarks to third parties disparaging the quality, character, utility, value, and workmanship of QAD's goods, services, officers and employees. These statements and remarks were and are false, were made without any reasonable justification, and were made for the express purpose of harming QAD's business.

[...]

35. [34.] At all times relevant herein, the third parties to whom the disparaging statements and remarks were made were the present customers, suppliers and trading partners of QAD [QAD-USA and QAD-Japan] and those whom with QAD [Cross-Complainants] were cultivating a future business or commercial relationship.

36. As a direct and proximate of these disparaging statements and remarks by defendants, those third parties to whom the statements and remarks were made have refrained from dealing with QAD [Cross-Complainants] or [and/or] limited their dealings with QAD [Cross-Complainants,] all to QAD's [Cross-Complainant's] damage in an amount which will be shown according to proof.

37. [36.] QAD is informed and believes, and
thereon alleges, that the conduct of SUBRAMANIAN,
VEDATECH, and the DOE defendants, and each of
them, [Cross-Defendants, and each of them,] as
set forth herein, was intentional, malicious,
oppressive and/or reckless and in conscious
disregard for the rights and welfare of
plaintiffs [Cross-Claimants], as well as done
with the improper intent directly to harm
plaintiffs [Cross-Complainants] and their
business, in that [Cross-]defendants knew the
statements and remarks they were making were
false, but despite such knowledge, they
intentionally libeled plaintiffs' [Cross-
Complainants'] reputation to unjustly benefit and
enrich [...] Accordingly an award of punitive and
exemplary damages is justified [...]

66.     In this case also it is obvious that the allegations regarding intellectual
property (i.e. at least paras. 21 [20] (L), (H), (I), (J), and (K) of the Complaint [First
Amended Cross-Complaint] form part of the "statements" and "remarks" that
VEDATECH and/or SUBRAMANIAN are supposed to have made that were libelous.
Thus, the resolution of issues related to these allegations are critical for the resolution of
QAD's claims for relief under this cause of action.

67.     Specifically, QAD is claiming that the alleged assertions of
"ownership to various intellectual property … including …
certain computer software" amounted to Trade Libel and Disparagement of
Good and Quality.

///

///

///

**THE FIFTH CAUSE OF ACTION FOR "INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE"**

68.     Paras.38-42 of the Complaint (paras.37-41 of the First-Amended Cross-Complaint) of QAD Inc. pleads QAD's cause of action for "intentional interference with prospective economic advantage". The relevant passages are:

> 38. [37.] Plaintiffs [Cross-Complainants]
> reallege and incorporate herein as if set forth
> in full the allegations of paragraphs 1 through
> **37 [36]**, of this Complaint [Cross-Complaint].
>
> 39. [38.] QAD [Cross-Complainants, and each of
> them,] have developed and enjoyed beneficial
> contractual and economic business relationships
> with numerous customer accounts in Japan and
> accounts based elsewhere in the world, but with
> offices in Japan, pursuant to which QAD has
> [Cross-Complainants] provided and/or has [have]
> the reasonable probability of providing in the
> future various software products and services
> related thereto. [...]
>
> [...]
>
> 41. [40.] By virtue and as a proximate result of
> the actions of defendants, and each of them,
> [Cross-Defendants, and each of them,] as set
> forth herein, [Cross-]defendants, and each of
> them, have substantially and intentionally
> interfered with QAD's [Cross-Complainants']
> actual and prospective economic relationship with
> these existing and potential customers.  Such
> interference has proximately resulted in damage
> to QAD in an amount according to proof.
>
> [...]

69.    In this case also it is obvious that the allegations regarding intellectual property (i.e. at least paras. 21 [20] (L), (H), (I), (J), and (K) of the Complaint [First Amended Cross-Complaint] are critical for the resolution of QAD's claims for relief under this cause of action.  Specifically herein, QAD claims that its potential to provide "software products and services" has been allegedly damaged or harmed by the alleged assertions made by VEDATECH and/or SUBRAMANIAN over these unspecified "intellectual property".

**THE SIXTH CAUSE OF ACTION FOR "BREACH OF FIDUCIARY DUTY" IN THE COMPLAINT (and originally in the "Counterclaims") of QAD**

70.    Paras.43-45 of the Complaint (paras.43-45 of the Counterclaims, Exhibit B, Tab-YY) of QAD Inc. pleads QAD's cause of action for "Breach of Fiduciary Duty" against SUBRAMANIAN.  The relevant passages are:

    43. Plaintiffs reallege and incorporate herein as
    if set forth in full the allegations of
    paragraphs 1 through **42 [41]**, of this Complaint
    [Cross-Complaint].

    44. As a director and Representative Director of
    QAD-Japan, defendant SUBRAMANIAN owed a fiduciary
    duty to QAD-Japan, and to QAD-USA as a
    shareholder in QAD-Japan, to act in utmost good
    faith in the best interests of the corporation
    and its shareholder, not to compete with the
    corporation, not to engage in self-dealing, and
    not to misappropriate assets of QAD-USA or QAD-
    Japan.  By virtue of the acts and conduct set
    forth above, **as more specifically alleged in
    paragraphs** 18, 20, and **21,** SUBRAMANIAN said
    fiduciary duties to QAD, which breaches have
    proximately resulted in damages to QAD in amount
    subject to proof.

[...]

71.     In this case it is quite obvious that the allegations regarding intellectual property (i.e. at least paras. 21 (L), (H), (I), (J), and (K) of the Complaint are critical for the resolution of QAD's claims for relief under this cause of action.  Specifically herein, QAD claims that SUBRAMANIAN allegedly breached his fiduciary duties in allegedly making improper assertions of "ownership" regarding unspecified "intellectual property" regarding "certain software".

**THE SIXTH CAUSE OF ACTION FOR "BREACH OF CONTRACT" IN THE FIRST-AMENDED CROSS-COMPLAINT OF QAD**

72.     <u>Paras.42-45 of the First-Amended Cross-Complaint (Exhibit B, Tab-YY)</u> of QAD Inc. pleads QAD's cause of action for "Breach of Contract" against VEDATECH and SUBRAMANIAN.  The relevant passages are:

> 42. Cross-Complainants reallege and incorporate herein as if set forth in full the allegations of paragraphs 1 through **41**, of these [sic] Counterclaims.

> 43. The conduct undertaken by SUBRAMANIAN and "Vedatech Corporation", alleged by plaintiffs in the Complaint to be VEDATECH, constitutes a breach by Cross-Defendants of written and oral agreements between Cross-Complainants and "Vedatech Corporation".

> [...]

73.     In this case it is QAD's case that the allegations regarding intellectual property (i.e. at least paras. 20 (L), (H), (I), (J), and (K) of the First-Amended Cross-Complaint) are tantamount to a breach of contract.  As pleaded, the breach of contract claim cannot be resolved without resolving the issues raised in para.20 thereof.

## SUMMARY OF THE VARIOUS CAUSES OF ACTION ASSERTED BY QAD

74.     It is clear that QAD has made allegations regarding unspecified "improper" assertions of ownership rights to various "intellectual property" including "certain computer software". What was and is not clear from the face of this "artfully pleaded" complaint (first-amended cross-complaint) at all is:

a.  What is the basis for this "ownership" – is it contractual, or otherwise?

b.  What is this "intellectual property" – is it trademark, copyright, patent, or some other aspect of software?

75.     What IS clear is that every single cause of action alleged by QAD incorporates these allegations and requires a proper resolution of these allegations in order to absolve VEDATECH parties from all liability as alleged in the Complaint and the First-Amended Cross-Complaint.

## EFFORTS BY VEDATECH PARTIES TO CLARIFY THE MEANING AND/OR SCOPE OF THE ALLEGATIONS REGARDING "INTELLECTUAL PROPERTY"

76.     In spite of haling Vedatech Inc. (the wrong party) and Subramanian into Court, even while proceedings were on foot in Japan, QAD has, to this day, refused to provide honest or even minimal discovery.

77.     A classic example is that QAD to this day has refused to provide basic insurance information regarding coverage for two different situations (and recent requests just days ago are still being met with silence):

(A)  [NOT PRODUCED UNTIL MAY 2003] QAD's own Directors and Officers ("D&O") Policies that might actually provide or might have provided coverage for SUBRAMANIAN.[8] QAD has provided copies of "claims-made" D&O

---

[8]     See EXHIBIT G, pages 1, 2, for QAD's internal discussion on how to cut off insurance for SUBRAMANIAN. This happened AFTER the decision by QAD to sue SUBRAMANIAN in the California Courts. In addition, on May 9, 2003, more than 2 years after some "form" interrogatories were propounded (in April 2001), QAD

policies for the August 1997 through mid August 2000 period ONLY in May 2003, after years of stonewalling, and even then leaving a cloud of uncertainty over the critical Jan 1998 period and, of course, the period covering the August 31, 2000 "cross-complaint" of QAD;

(B)  [NOTHING PRODUCED] QAD's own CGL (Commercial General Liability) policies that would cover any judgments against QAD and which might permit Vedatech Parties to offer open settlement proposals to QAD's insurers.[9]

78.  VEDATECH Parties tried several different ways to get clarifications or discovery from QAD:  (1) informal means [no luck at all], (2) demurrers [no luck, but see Order of Judge Rushing in next section]  (3) Document Discovery [met with extended stonewalling – QAD ignored the Magistrate Judge, the Hon. Patricia Trumbull's order when in Federal Court (Exhibit B, Tab-18.) and then after remand claimed the Order was "moot"], and (4) Interrogatories, where, after years of stonewalling [as can be seen easily and clearly from the current responses and boilerplate objections to even simple questions], QAD finally conceded in its responses mailed on March 10, 2004 (received on March 11, 2004) that it was, all along, referring to "copyrights" when it "artfully" (or coyly) made references to "intellectual property" in its Complaint in para.21(L);

---

reluctantly disclosed some insurance information regarding property loss *for itself.* (Exhibit E, Tab-2.2, p.3). But this does not include the critical CGL (Commercial General Liability) coverage, which would indemnify QAD against any Judgments that Vedatech would get against them.  Vedatech parties have even in the last several weeks requested counsel for QAD, Mr Connell, to forward such documents or provide information regarding the same, but such requests have been met with silence.  It is now more than six (6) years from QAD chose to sue Vedatech Inc, the Washington State company and Subramanian in California, but QAD does not see it fit to share such information with us.

[9]  This is notwithstanding the fact that now, AFTER the removal, QAD has entered into a collusive and secret "settlement" with Vedatech's insurers, St.Paul, and the duo is now trying to use that disputed "settlement" to defeat federal jurisdiction.

**SUMMARY OF EFFORTS THROUGH DEMURRERS IN STATE COURT**

79.     On August 24, 2000, Defendant Subramanian, in his demurrer to QAD's original Complaint, raised the issue of the uncertain nature of the allegations in para.21(L) of the Complaint. (Exhibit D, Tab-1.2, Memorandum, p.14, lines 7-11.) Vedatech parties also demurred to QAD's first-amended cross-complaint where they complained that QAD's pleadings were vague and uncertain. (*id*, Tab-3.1, ¶¶ 5,10,15,20,25,30,35,40,45,50,55,60.) In ruling upon this motion, the Court (the Hon. Judge Rushing), in its (his) Order dated January 26, 2001, specifically addressed this issue as follows: (Exhibit D, Tab-8, ORDER, p.13, lines 18-20; and lines 23-25):

```
Vedatech claims that allegations are vague in the
following respects:  (1) uncertainty about alter
ego, argued above;  (2) uncertainty regarding
allegations of intellectual property; […]

These matters generally can be found in
discovery.  It is certainly within the power of
cross-defendants to take discovery on each of
these matters about which they are uncertain.
```

**SUMMARY OF EFFORTS THROUGH DISCOVERY REQUESTS**

80.     Vedatech Inc. removed the LEAD case on July 29, 1998 to Federal Court C-98-20792 SW. Vedatech Inc., the Washington State, moved for dismissal for lack of personal jurisdiction. This was denied on March 16, 2000. (ORDER at Exhibit B, Tab-11.) In spite of the fact that its attorneys, the firm of Bogle and Gates dissolved and the new attorneys Morrison and Foerster had to come up to speed in a short time frame, Vedatech Inc. moved promptly to request documents and interrogatory answers from QAD. The first set of requests were propounded on June 30, 1999. (Exhibit E, Tab-1, and Exhibit F.) QAD responded with 100% OBJECTIONS, all of them frivolous, and

boilerplate.[10]  Vedatech moved promptly to compel, and the Honorable Magistrate Judge Patricia Trumbull granted the said motion.  (ORDER at Exhibit B, Tab-18.)  QAD was supposed to respond with discovery on October 8, 1999.  No responses were produced.  Subsequently, a small number of heavily redacted and filtered set of documents were produced, but no interrogatory responses were produced.  Subsequently, Vedatech parties moved for sanctions which were granted on Mar3, 2000.  (ORDER at Exhibit B, Tab-29.)  Just before the sanctions hearing, on February 15, 2000, QAD produced its First Set of Supplemental responses to the interrogatories (i.e. the first responses that were not simply objections).  (Responses, Exhibit E, Tab-1.2.)

**INTERROGATORIES PROPOUNDED IN FEDERAL COURT IN JUNE 1999**

81.     For example, the following interrogatory was propounded in June 1999.

**INTERROGATORY NO. 2: (See Exhibit E, Tab 1, pp.6-7)**

Describe in detail the services performed by Vedatech Incorporated in connection with the formation and operation of QAD Japan K.K., including but not limited to the pre-sales technical support and localization services, as alleged in Paragraph 16 of the Complaint,

---

[10]     It is interesting to note that but for some minor concessions, the latest interrogatory response mailed on March 10, 2004 is based on the same style, template, and stonewalling tactics.  Strangely though, QAD claims to be ready for trial.  This case is NOWHERE near being ready for trial and unless QAD provides honest and proper discovery, grave injustice would be perpetrated on the Vedatech Parties.  An additional reason why Vedatech parties have not been able to file more motions to Compel QAD to provide discovery relate to the collateral issue of the effect of the insurer St.Paul and its "coverage action", in which St.Paul has been viciously attacking its own insured in myriad ways, some of which is the subject of the related cases, C-04-01249, and C-04-01403, both of them hopefully to be reassigned to be handled along with this case.  As noted elsewhere, QAD and St.Paul are now collusively attempting to defeat Federal Jurisdiction by coming up with a secretly negotiated "agreement and release" by which they attempt to dismiss various claims in this action *after* removal.

identify all documents describing, referring or
relating to such services, and identify the
individual(s) who are most knowledgeable about
the foregoing.

82.     On February 15, 2000 days before the sanctions hearing, the following
response was provided, Exhibit E, Tab-1.2, p.8, lines 5-16: (**emphasis** added)

Vedatech, acting through Mani Subramanian or
persons employed or contracted by him, at various
times performed virtually all of the services in
connection with the formation and operation of
QAD Japan K.K., including pre-sales, sales and
**localization services**, **from the inception of QAD
Japan K.K. through in or about August, 1997.
These services included:  Translation of software
and literature; programming services;**
Administrative services, including clerical,
financial, and procurement; Sales services; Pre-
sales functions for sales efforts, including
demonstrations, suitability analyses, and
preparation of quotes; **Software installations;
Training; and System Testing.**

83.     Yet another interrogatory propounded in June 1999, elicited the following
response:

**INTERROGATORY NO. 6: (See Exhibit E, Tab 1, p.7)**

Describe in detail each of the fraudulent,
unauthorized, or unfair activities or actions in
which Vedatech Incorporated has engaged or
continues to engage, as alleged in Paragraphs
18(A)-(D), and 21(A)-(L) of the Complaint, [...]

84.     QAD answered with only objections August 2, 1999. On February 15, 2000, days before the sanctions hearing, the following was provided: (***id*, Tab-1.2, p.13**)

```
With respect to the first portion of this
Interrogatory, please see Exhibit A. [...]
```

[Exhibit A of this response (after *id*, p.25), dealing with para.21(L) states: ]

```
QAD Inc. paid in excess of $1.0 Million to
Vedatech, either directly or through QAD Japan
K.K., for localization of its software with the
understanding that such software would be owned
by QAD Inc.  Subramanian has claimed that
ownership of such localized software belongs to
Vedatech.  Such a claim is either invalid, or, if
valid, resulted from Subramanian's failure, as
President and Representative Director of QAD
Japan K.K., to fulfill his fiduciary duty to
Plaintiffs to obtain the necessary ownership
rights for QAD Inc.
```

85.     This answer also illustrates the broad nature of the claims made by QAD. As noted in ¶¶ 70-71 above, the allegations of para.21(L) of the complaint also go to the cause of action for Breach of Fiduciary Duty as they go to all of the causes of action in the Complaint. The issue of the "ownership of the intellectual property" is a key issue for QAD and overshadows many of the other red herrings that are alleged in the Complaint. For example, in the document and other discovery that Defendants have been able to obtain, the only evidence of any of the allegations in the Complaint related to this topic. Most of the other allegations are false and cooked up, whereas the dispute over the "intellectual property" is real and substantial.

**INTERROGATORIES RE-PROPOUNDED IN STATE COURT IN APRIL 2001**

86.     In April 2000, the case was remanded by stipulation and order as described elsewhere in this Notice. (Remand Orders, Exhibit B, Tabs-36,37,38.)

87.     After remand, QAD claimed that the order of the Magistrate Judge was "moot" and hence it had no further obligations to produce documents or otherwise followup on the discovery orders made in Federal Court.  Accordingly, in April 2001, Vedatech Parties had to start a new round of discovery repeating many of the same questions already asked in June 1999 but not answered (many not to this day.)

88.     For example, an interrogatory relating to the work performed by Vedatech for QAD (including the "localization", the subject matter of the "intellectual property" claims,) elicited NO response at first, and then, after years of stonewalling, the following response in May 2003: **Form Interrogatory No.  50.1 (Exhibit E, Tab 2) REQUEST made in APRIL 2001**

```
For each agreement alleged in the pleadings:

(a) Identify all Documents that are part of the
agreement and for each state the name, ADDRESS,
and telephone number for each PERSON
```

**NO substantive responses BY SEP 10, 2001 DEADLINE**

**RESPONSES PROVIDED ON MAY 9, 2003 (_id_, tab-2.2)**

```
[...] In the course of the parties' dealing and
relationship from early 1994 through mid-1997,
there were also numerous "agreements" between the
parties with respect to work done by Vedatech and
paid for by QAD Japan K.K. and/or QAD Inc.  These
agreements, however which were both written and
non-written, are not specifically "alleged in the
pleadings" per se.  However, these agreements are
relevant at least to the extent that they relate
to the terms under which Vedatech performed
```

> **localization and translation work for QAD Inc.,
> and specifically, to the extent that such
> agreements established QAD's ownership interest
> in the software.**

89.     This is the first time QAD clearly states that it is contesting the "ownership" in the software on the basis of the type of, nature of, and the details of the contractual relationship between the parties.  In and of itself, it still sounds in contract law, a state cause of action.  Again, the "ownership interest" which is the vague term QAD has consistently and "artfully" used to conceal the underlying copyright issues.

90.     Another companion question propounded in April 2001 elicited the following response, which is a simple regurgitation of the language in the Complaint:

**Form Interrogatory No. 50.2 (<u>Exhibit E, Tab 2</u>) REQUEST made in APRIL 2001**

> **Was there breach of any agreement alleged in the
> pleadings?  If so, for each breach describe and
> give the date of every act or omission that you
> claim is the breach of the agreement.**

> **NO substantive responses BY SEP 10, 2001 DEADLINE**

> **RESPONSES PROVIDED ON MAY 9, 2003 (id, Tab-2.2)**

> **[...]Plaintiffs further content that Subramanian
> and/or Vedatech's improper assertion of ownership
> rights over localized QAD Inc. MFG/PRO software
> constituted a breach of agreements with QAD Inc.**

91.     Further special interrogatories propounded in April 2001 also elicited vague responses after years of pressing for answers: **Special Interrogatory No.6 (<u>Exhibit E, Tab 3</u>) REQUEST made in APRIL 2001**

> **Why did you select Subramanian and Vedatech to
> enter into the March 24, 1994 contract.**

> **NO RESPONSES PROVIDED BY SEP 10, 2001 DEADLINE**

**RESPONSES FINALLY PROVIDED ON MAY 9, 2003**

[...] In addition, Mr. Subramanian and his
company appeared to possess existing skills to do
localization work.  QAD determined at the time
that his approach appeared preferable to, and to
have a lower entry cost than, starting "from the
ground up" with foreign resources.  In addition,
it seemed preferable to entering into a
relationship with a joint venture partner, or
simply entering into a relationship with a local
distributor.

92.     More direct questions regarding the intellectual property issue did not get
any responses at all: **Special Interrogatory No.58 (<u>Exhibit E,Tab 3,
p.11</u>) REQUEST made on APRIL 18, 2001**

Please identify the intellectual property owned
by QAD (improperly alleged to be owned by
Vedatech and/or Subramanian.

**RESPONSES PROVIDED ON SEP 10, 2001**

Plaintiffs object to this Interrogatory as
unintelligible, overbroad, and improperly
argumentative and/or misstating plaintiffs'
contentions.

**NO FURTHER RESPONSES PROVIDED ON MAY 9, 2003**

93.     The next question *eventually* after a year and a half of stonewalling,
produced a somewhat less evasive answer: **Special Interrogatory No.59
(<u>Exhibit E,Tab 3</u>) REQUEST made on APRIL 18, 2001**

Please state all facts which support your
contention that Subramanian and Vedatech
improperly asserted ownership to various
intellectual property of QAD.

**RESPONSES PROVIDED ON SEP 10, 2001**

<< Unhelpful generalized stonewalling >>.

**FURTHER RESPONSES PROVIDED ON MAY 9, 2003**

Plaintiff's further respond:  In and after 1994,
QAD entered into agreements with Vedatech,
through Subramanian, to provide Japanese
localization/translation of QAD's MFG/PRO
software.  QAD paid Vedatech for such services.
Under the terms of the agreements, in return for
payment, QAD was to have been granted ownership
rights in the modified software – including the
object code and source code, and Vedatech was not
to retain any such rights.  In or about 1997, QAD
requested that Subramanian and/or Vedatech
provide to QAD the object code and source code
for the localized MFG/PRO software, but
Subramanian and/or Vedatech refused to turn it
over and, to responding party's knowledge,
continue to refuse to turn it over.

In or about late 1997 or early 1998, QAD
became aware that Vedatech and/or Subramanian
were apparently attempting to sell copies of
(i.e., grant licenses for) the localized
/translated MFG/PRO software to at least one
customer in Japan.  Neither Vedatech nor
Subramanian had the right to grant such licenses
to QAD's MFG/PRO software, inasmuch as neither
Vedatech nor Subramanian were authorized
distributors for QAD.  QAD Japan K.K. has been
established to act as QAD's distributor for Japan
and were the sole licensor of the source code, as
provided in March 24, 1994 Agreement.

94.      Finally in February 2004, after QAD refused to provide ANY document from email archives that had been requested since June 1999, and continued to stonewall, Vedatech parties propounded a set of interrogatories focused specifically on the issue of the nature of the "ownership in intellectual property" that QAD was complaining about. It is clear from the responses from QAD that even after so many years of stonewalling it was not willing to provide simple straightforward answers to these specific questions. Nevertheless, for the first time, QAD made clear its real position, which is that it claimed ownership of "copyrights" in the localized /translated software that was developed by Vedatech Parties (as explained in the prior interrogatory responses.)  See, for example, **Special Interrogatory No.13 (Exhibit E,Tab 9) REQUEST made on FEBRUARY 9, 2004**

> DESCRIBE any sales, licenses or maintenance
> contracts by or in which QAD sold or licensed,
> maintained or extended any previously existing
> sale, license or maintenance contract of any
> source code, software or INTELLECTUAL PROPERTY,
> at any time after July 31, 1997, that included or
> incorporated any source code, software or
> INTELLECTUAL PROPERTY owned, created or authored
> by or otherwise acquired, directly or indirectly,
> from VEDATECH..

> > For purposes of this interrogatory, "DESCRIBE" is defined as:
> > stating whether any such sales or licensing or agreement over
> > maintenance took place, to whom any such software or license
> > or maintenance agreement were sold or licensed or with whom
> > it was agreed to, the dates of any such sale or license or
> > agreement, the place of any such sales or licensing or
> > agreement, and the name of the product, source code, version
> > number(s), of the software or INTELLECTUAL PROPERTY
> > sold or licensed or made the subject of any agreement.

"INTELLECTUAL PROPERTY" or "INTELLECTUAL PROPERTIES" means:  The source code, software or documentation or other intellectual properties, QAD paid VEDATECH for or otherwise acquired from VEDATECH including but not limited to, the intellectual property or intellectual properties referred to explicitly or implicitly in paragraph 21(L) of QAD's complaint in CV 771638 or in paragraph 20(L) of QAD's cross-complaint in CV 784685.

**RESPONSES SENT BY U.S. MAIL ON MARCH 10, 2003**

QAD objects to this Interrogatory on the following grounds:  (1) C.C.P. Section 2030(c)(5) states, in pertinent part, that "No specially prepared interrogatory shall contain subparts, or a compound, conjunctive, or disjunctive question."  This Interrogatory contains at least seven (7) such "subparts" and "compound, conjunctive, or disjunctive questions." Furthermore, the purported "defined terms" – including "INTELLECTUAL PROPERTY, " "VEDATECH," and "QAD" – are themselves, compound, conjunctive, or disjunctive to the extent that they are sufficiently vague and ambiguous to preclude a clear understanding by QAD of what is being asked.

Subject to the foregoing objections, and to the extent that QAD is able, in light of the problems raised by the foregoing objections, to form any assumption as to the identify of the "INTELLECTUAL PROPERTY" referenced in this Interrogatory, QAD responds:

In spite of multiple requests from QAD over several years, and despite specific promises to do so in 1997, neither Mr. Subramanian nor any

Vedatech corporate entity has provided QAD with
access to said "INTELLECTUAL PROPERTIES." **QAD
contends that it did or was entitled to acquire
all rights, including any copyrights or
copyrightable interests to these localizations
and customizations and that, if such rights were
not, in fact, acquired, the failure to acquire
any such rights was due to improper actions of Mr
Subramanian and Vedatech.** However, QAD is unable
to respond to the specific requests for
information contained in this Interrogatory by
virtue of the fact that neither Mr. Subramanian
nor Vedatech have ever provided copies of the
subject properties to QAD despite repeated
requests for them.

**FIRST INTIMATION REGARDING QAD'S CLAIM TO COPYRIGHTS**

95.     This was the first time that QAD had formally raised copyright issues in

detailing their artfully pleaded Complaint.  Not only does QAD make copyright claims in

these interrogatories, it specifically ties it in this interrogatory response directly to the

State Law claim it has made for "Breach of Fiduciary Duty" against Subramanian.  As

submitted above, each and every one of the causes of action are intertwined with the

allegations regarding "intellectual property", the "ownership" thereof, and the nature of

the relationship between the parties that would affect such rights to "intellectual

property".  It has thus become clear that this issue of "intellectual property" that QAD

was carefully skirting is a dispute over the issue of <u>who owns the Copyright</u> in the

"localized" / translated software.  The next question is whether the nature of this dispute

requires the interpretation and/or the construction of the Copyright Act or whether the

state law causes of action are complete preempted, in which case a "federal question"

would properly have been raised, justifying removal and clearing the hurdle for subject

matter jurisdiction of this Court.

**MAR 15, 2004 REMOVAL TO FEDERAL COURT**

96.     On this basis, Subramanian, Vedatech Inc., and Vedatech K.K. individually and jointly removed the consolidated action to Federal Court on March 15, 2004.  QAD parties' attorneys were hand-served with the Notice of Removal on March 15, 2004.  This was assigned to Case No. C-04-01035 PJH.

97.     On the morning of March 16, 2004, QAD parties, in an attempt to defeat federal jurisdiction, claimed to have entered into an informal "oral agreement" with St.Paul, removing parties' insurer, to settle all of their claims against removing parties.

98.     On March 23, 2004, the District Court issued a Show Cause Order (Exhibit H, Tab-5), requesting removing parties to prove subject matter jurisdiction.  On April 12, 2004, removing parties filed an Amended Notice of Removal, (Exhibit-H, Tab-8).  On April 29, 2004, the District Court entered a REMAND order, (Exhibit H, Tab-19.)

99.     The order of the District Court may be interpreted in at least two different but equally plausible and proper ways:

- First, that there was no federal question raised as of March 15, 2004 [Line 1 of Order] and the removal of the case was premature ("untimely") [Line 2 of the Order].

- Second, that there was a federal question [as follows if Line 2 was referring to the 30-day removal time limit], but the Removing parties were at fault for having "failed to establish" such a federal question in response to the Order to Show Cause [Line 1 of the Order], and in addition, the removal was more than 30 days from when the federal question became apparent [Line 2 of the Order].

- It is possible that the Court meant the Order differently, but removing parties are unable to analyze the matter any further without further investigation.

100.     For the purpose of this Notice of Removal, removing parties will proceed on the basis of the first interpretation.

## NEW EVIDENCE SINCE MARCH 15, 2004

101.    On April 26-27, 2004, QAD Inc., through its counsel, Mr William Connell filed responses to the Order to Show Cause by the Court, (Exhibit-H, Tab-14-18.).   In the motion papers, especially the Memorandums of Exhibit-H, Tabs-14, 17, Mr William Connell provides in great detail clear proof of the existence of a "federal question" and complete preemption of the state law claims, by clarifying previous allegations and making several new allegations, all very strongly.  Many of the "factual" allegations regarding the non-copyright issues are considered by removing parties to be false (and mostly scandalous and inflammatory), but the allegations and clarifications relevant to the issue of a federal question can be broadly classified as:

   a.   Clarifications that prove the need for the application of "work-for-hire" doctrine – to the extent that the argument in the previous notice of removal was based on logical necessity of the adoption of this doctrine, the current "clarifications" by QAD plaintiffs affirmatively make all the allegations necessary to conclusively establish the need to interpret this part of the Copyright Act in order to prove the state law causes of action for those acts that involve matters relating to the localization and the software involved.

   b.   Thus, although QAD, through Mr Connell, parrots the magic phrase that this is a pure contractual issue, the new allegations of Mr Connell make it absolutely clear that there is no written agreement regarding the ownership of copyrights.  The burden for QAD is to establish that they have "ownership" of such rights IN SPITE OF THE work-for-hire doctrine.  Thus, without the need for construction and interpretation of the Copyright Act, none of the so-called "contractual" claims can be resolved, and certainly not with reference to substantive law under the California Codes or common law with respect to contracts, obligations etc.

c.  Clarifications that prove the need for the application and interpretation of the Berne Convention in order to properly resolve the issues of copyright infringement or equivalent acts that removing parties are accused of (e.g. "licensing" software without authorization);   Although in the previous removal, defendants had argued that it was logical that the Berne Convention needs to be interpreted (as it followed logically once it was confirmed that the matter was one for copyrights), the new allegations from QAD affirmatively confirm by statements made by Mr Connell now on behalf of QAD that the matter is one regarding Japanese copyrights and that QAD has now developed a new software.  These new affirmative and confirmed allegations, in conjunction with the documentary evidence regarding "reengineering" of Vedatech's software by QAD's Australian subsidiary, now confirm that the infringement activities of QAD in California at its Carpinteria headquarters and other places in the United States (such as New Jersey) are actionable in this District Court.

102.    In the previous removal, removing parties relied on the logical conclusions to be drawn from QAD's confirmation that the "intellectual property" it was referring to was indeed "copyright".  In its April 26-27, 2004 motion papers, QAD has, on its own, now made affirmative allegations and confirmation that the "ownership" relates *both* to copyright and physical ownership, that copyright issues ARE involved in the proof of at least the three causes of action that QAD itself refers to, confirms that there are NO written agreements with respect to the issue of such copyright ownership (thus automatically triggering the application of the "work for hire" doctrine" (which is the default situation under the Copyright Act) with respect to the ownership of the Copyrights, and also confirms that at least some of the copyrights in the localized code arise under Japanese law, thus triggering the application of the Berne Convention.  In

addition, QAD now additionally makes allegations for the first time that confirm that it has developed software to replace the localized software. This, combined with the document from discovery referred to above that shows that their Australian subsidiary was involved in "reengineering" the localized software and removing Vedatech "labels", now for the first time show that QAD itself has engaged in copyright infringement activities in the United States in reliance upon the Vedatech localized software (thus again triggering the application of the Berne Convention).

103. Thus, the prior remand order found that there was no "federal question" as to the prior removal, which, by federal law is deemed to be based on the position as of March 15, 2004. Since then Mr William Connell, QAD's counsel has provided very detailed information confirming the theories of removing parties based on a fair interpretation of the confirmation of the identity of the "intellectual property" as "copyright" on March 11, 2004 [In fact, as noted above, QAD now claims that this both refers to physical characteristics and the copyright attribute, thus confirming that Vedatech parties could not have removed earlier on the basis of the prior bare allegations of "ownership" without clarification that copyrights were involved].

**IMPACT OF THE NEW EVIDENCE / CLARIFICATIONS SINCE APR 26, 2004**

104. Once QAD has made it clear that it seeks to *also* asset copyrights, in addition to physical possession and ownership, and has all along based its state law claims on its accusations / allegations against Vedatech parties regarding their purported violation of QAD's copyrights, and given that since March 15, 2004, QAD has amplified its previous pithy allegations with detailed allegations that conclusively state and prove that copyright issues are necessary for the resolution of state law causes of action [i.e, with respect to all matters that involve the issues of software and intellectual property], the following aspects of QAD's Complaint become relevant:

a. QAD claims that it "paid over $1.0 Million to Vedatech" and that justifies QAD's allegation that Vedatech's claims for ownership is a "breach of fiduciary duty". Without the issue of copyrights, this may sound in state law claims on contract, but in the context of copyrights this is statutorily controlled under the "work for hire" doctrine. (17 U.S.C. §§ 101, 201(b) etc.) It is impossible to resolve QAD's claims (even though they sound in state law) without construction of the Copyright Act, 17 U.S.C. §§101 et seq. The new information provided by QAD since April 26, 2004 in its motion papers provide clear evidence and allegations that there is no written agreement and that reliance needs to be placed on the "work for hire" doctrine of the Copyright Act for the resolution of its claims regarding software and intellectual property.

b. In addition, QAD is now essentially accusing Vedatech of copyright infringement, even though that cause of action is hidden in the artful pleading [i.e., QAD has now made it clear, especially so in its April 26, 2004 motion papers, that Vedatech has allegedly unlawfully "licensed" its software and that it is improper because QAD owns the copyrights]. In their May 9, 2003 supplemental response to Interrogatory No.59, QAD made vague allegations of impropriety regarding Vedatech "apparently attempting to license localized software to at least one customer in Japan." The April 26-27, 2004 papers submitted by Mr William Connell affirmatively confirm the interpretation of these responses in light of the new revelation that the nature of the "intellectual property" was copyrights all along. While this may sound in contract, in the context of "copyrights" it is primarily an infringement under 17 U.S.C § 501 of QAD's alleged "copyrights", the issue of "copyright" itself being claimed for the first time in QAD's responses mailed on March 10, 2004. Whereas it can be said that QAD has not specifically pleaded copyright infringement, QAD claims these actions are a breach of Subramanian's fiduciary duties, amount to trade libel, interfered with existing and

potential customer relationships, was unfair competition, and in addition amounted to fraud. The April 26-27, 2004 papers now confirm affirmatively that they are definitely implicated at least (per QAD) in the causes of action for contract, breach of fiduciary duty and fraud, specifically in the context of copyrights). 28 U.S.C. §1338(b) in fact would give the Court original jurisdiction over this "entire action" on the basis of the unfair competition claims (although they are pleaded in terms of the California B&P sections 17200 et seq.)

c. Although a federal defense is normally not a reason for assumption of federal jurisdiction, when there is complete preemption, it does provide jurisdiction over the state law claims. In this case, QAD's affirmative claims involve state law claims that require the interpretation of the Copyright Act are also simply riding on top of essentially claims for copyright infringement.

d. First, even without reaching the question of a federal defense, the Complaint requires the interpretation and construction of the Copyright Act. One interpretation of the work-for-hire doctrine would absolve Defendants of all responsibility, and another interpretation would cause them liability [simple preemption / artful pleading doctrine].

e. Second, this is a clear cut case of complete preemption of the state law causes of action, in this case of each and every one of the various causes of action. Even the cause of action for fraud, which is poorly pleaded, embraces fully the issues regarding the allegations of copyright – for example, QAD clearly claims that the lack of "transfer of ownership" which it says was a breach of fiduciary duty, also sounds in fraud. The new papers in April 25-26, 2004 confirm this.

f. Contrary to QAD's understanding of this matter, in the context of complete preemption of a state law cause of action, it is not relevant that there are other allegations that would enable QAD to prove the same cause of action without reference to federal law (of Copyrights here). Since the issues involving

copyright need interpretation and construction of the Copyright Act for the purpose of resolution of the allegations that QAD has made vis-à-vis the software and intellectual property issues, ALL other issues relating to that cause of action are subsumed and completely preempted by the Copyright Act / federal laws. (See e.g. the case of _Rosciszewski v Arete Assoc. Inc.,_ 1 F.3d 225 (4th Cir., 1993) referred to in the March 23, 2004 Show Cause Order of the Court (Exhibit-H, Taqb-5, p.6, lines 7-8). A complete preemption analysis along the lines of _Firoozye v Earthlink Network_ 153 F.Supp.2d 1115 (N.D.Cal., 2001), or _Worth v. Universal Pictures, Inc._, 5 F.Supp.2d 816, 821 (C.D.Cal.,1997), with the detailed allegations and information provided by QAD's counsel Mr William Connell in the motion papers of April 26, 2004 and April 27, 2004 show that at least one or more, but in fact all of the causes of action are completely preempted by the Copyright Act. This situation can be distinguished from the facts in _Dielsi v. Falk_, 916 F.Supp. 985 (C.D.Cal.1996) in that because of the operation of the Berne Convention there is no requirement for registration of the copyrights that arose under Japanese law that are alleged to have been violated, at least in part within the United States by United States plaintiffs (viz. Subramanian when in the United States as alleged by QAD). Furthermore, QAD's own copyright infringement within the Untied States of the Japanese copyrights claimed by Vedatech are also governed by the Berne Convention and do not need registration as was found necessary in the _Dielsi_ case. In the case of complete preemption such as herein, such a defense by removing parties also give rise to the federal question necessary for removal through the doctrine of "complete preemption".

g. In this case, Vedatech parties DO have a complete defense in the Copyright Act. Specifically, Vedatech parties now wish to amend their answers to state a defense based on the work-for-hire doctrine under the Copyright Act, on being the true authors of the localizations and the translations and hence prove that there was

nothing "improper" even if any "claims to ownership" etc. were made to customers, or attempts to "license" the localized software were made.

h.    In addition, Vedatech parties will also, possibly additional

105.    On the issue of territoriality, QAD specifically alleges in the Complaint (Exhibit B, Tab-1, ¶3 @ p.2, lines 18-22), that "SUBRAMANIAN … makes, and at various and several times relevant to the matters set forth in this action has made, repeated trips to the State of California in connection with the matters set forth herein and for other purposes.    Vedatech Inc. is a Washington State Corporation that is accused of undertaking these action. Thus, the matter is one of actions, including those for copyright infringement undertaken within the U.S., which is actionable in the District Court here.

106.    In fact, the fact that QAD in its papers submitted on April 26-27, 2004 argues for the "extraterritoriality" exception for Copyright infringement is in and of itself conclusive trigger for complete preemption since QAD is acknowledging for the first time that there is copyright infringement alleged, but wishes to take advantage (incorrectly and improperly) of the exception where the infringement took place entirely outside the United States.  Thus, this, in and of itself should permit proper removal jurisdiction.  These allegations regarding "extra-territoriality" of copyright infringement etc., were not made before March 15, 2004.

107.    In addition, the actual work done by Vedatech was predominantly in Japan, as the interrogatory responses clearly state.  (See e.g. Exhibit E, Tab-1.2, p.29.) On the other hand, it is clearly alleged that QAD Inc. is a corporation headquartered in Carpinteria, California.  Thus, the copyrights in the original MFG/PRO software are those arising under the U.S. laws.  The copyright that QAD is disputing is in the Localizations / Japanizations and translations of this original software, and to which Vedatech K.K. claims "ownership", (Complaint, para.21(L)),  arise under Japanese copyright law, as now affirmatively confirmed in the allegations and information provided by Mr Connell in the April 26-27 motion papers / memoranda.  The

infringement or other actions predicated on infringement are alleged to have been by a Washington State corporation operating in the U.S. and Subramanian alleged to have traveled to California frequently. The infringement by QAD of the Japanese copyrights of Vedatech happened in California (as now newly alleged by QAD regarding Thus, the provisions of the Berne Convention, and its interpretation and construction also will play a prominent role in being able to resolve QAD's claims in their Complaint.

108.    This (i.e., the need to interpret a treaty) is an independent reason for this Court to have original subject matter jurisdiction, since under 28 U.S.C. 1331, a federal question arises when there is an action, such as herein, "arising under" the "treaties of the United States". [Berne Convention.]

109.    Another issue, that relates to the "complete preemption" doctrine which operates against the usual presumption of no federal jurisdiction on the basis of a federal defense is that Vedatech parties potentially have copyright infringement claims against QAD (especially if they prevail on the question of copyright "ownership" under work-for-hire doctrine, in spite of it, or otherwise.) It is clear that Vedatech has authorship of the Localizations and translations because QAD admits in its interrogatories (as detailed above) that Vedatech performed these tasks and now admits that there was no written contract regarding the transfer of such rights. Any kind of agreement regarding this matter is strictly governed by the "work for hire" doctrine of the Copyright Act.

**ATTEMPTS TO GET INFORMATION /DETAILS FROM QAD THROUGH DOCUMENT REQUESTS**

110.    Exhibit F collects the various requests by Vedatech parties to get proper document discovery from QAD. It is clear from QAD's stonewalling that QAD has refused to provide proper discovery and has been fraudulently concealing information regarding its actions related to copyrights. For example, in Exhibit F, Tab-2, p.47, [Bates No.904], the email darkly hints about QAD personnel being involved in "reverse engineering" and trying to remove Vedatech "labels" from some unspecified "code".

Whereas the indication is that this was done by QAD-Australia (which is an Australian company and a subsidiary of QAD Inc.), the role of QAD Inc. is not clear. In addition, although the infringement would seem to be overseas, it is quite possible that QAD Inc. participated in the infringement from its headquarters in California and/or is otherwise vicariously liable for the same. Vedatech parties have been trying to get further information in order to formulate their own "counterclaims" for copyright infringement for a long time, with very little success. As can be seen from the responses in Exhibit F, even simple email archives have not been provided and it is very difficult for Vedatech to progress its case. Now, for the first time in its April 26-27, 2004 papers, QAD clearly and officially alleges and confirms that it has developed new software on the subject of localizations after engaging in such "reengineering" of Vedatech software.

111. If proper discovery can be obtained from QAD, Vedatech in all likelihood will have counterclaims for copyright infringement (in addition to the federal defenses based on the work-for-hire doctrine in 17 U.S.C. §§ 101, 201 etc.) Such counterclaims themselves would have to be asserted through the provisions of the Berne Convention, and this Court will have exclusive subject matter jurisdiction over these issues.

112. QAD Inc.'s only business is to develop and sell software (Complaint, Exhibit B, Tab-1, ¶ 7 @ p.4, lines 6-12.) Vedatech's main role was adapting such software to the Japanese market. Copyrights to such software is the key factor in determining the share of the profits to be made by each party in such a market. The core dispute between the parties relates to copyrights. This completely preempts other state law claims, and this Court has subject matter jurisdiction over the entire action.

113. In its April 26-27, 2004 papers, QAD puts forth in great detail various false, scandalous allegations regarding Vedatech parties. The doctrine of complete preemption is not defeated by the presence of any volume of such claims. Apart from the prejudicial and poison-the-well nature of such allegations, such allegations do not detract from the clear federal question raised by the remaining allegations and clarifications.

## ACTION IS REMOVABLE PURSUANT TO §§1331, 1338, 1441 &1446

114.    This is a civil action over which this court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and which has become removable pursuant to 28 U.S.C. § 1441 et seq. in that certain of the claims alleged in the action arise under the Federal Copyright Act, 17 U.S.C. § 101 et seq., § 501, et seq. and under the Berne Convention. This court to the extent necessary also has jurisdiction over any state law claims that are not completely preempted under 28 U.S.C. § 1367 or 28 U.S.C § 1441(c).

## JURISDICTIONAL STATEMENT PURSUANT TO LOCAL RULE 3-5(a)

115.    The federal courts have exclusive jurisdiction to hear and decide copyright disputes. 28 U.S.C. § 1338. See also 28 U.S.C. § 1331, granting jurisdiction to hear cases arising under the Constitution, laws or treaties of the United States.

116.    17 U.S.C. § 101 defines "work for hire as follows:

```
A ''work made for hire'' is -

(1) a work prepared by an employee within the
scope of his or her employment; or

(2) a work specially ordered or commissioned for
use as a contribution to a collective work,
[...], as a translation, as a supplementary work,
as a compilation, as an instructional text, as a
test, as answer material for a test, [...], if
the parties expressly agree in a written
instrument signed by them that the work shall be
considered a work made for hire. For the purpose
of the foregoing sentence, a ''supplementary
work'' is a work prepared for publication as a
secondary adjunct to a work by another author for
the purpose of introducing, concluding,
illustrating, explaining, revising, commenting
```

upon, or assisting in the use of the other work,
such as forewords, afterwords, pictorial
illustrations, maps, charts, tables, editorial
notes, musical arrangements, answer material for
tests, bibliographies, appendixes, and indexes,
and an ''instructional text'' is a literary,
pictorial, or graphic work prepared for
publication and with the purpose of use in
systematic instructional activities.

117.    QAD, in its recent interrogatory response, for the first time clarifies its

pleadings to claim that it has copyrights to the "localized" software developed by

VEDATECH, and that it has "ownership" of such copyright because of the "work for

hire" doctrine.  It is clear from the detailed allegations of the contractual relationship

between the parties, and especially the confirmation and allegations made in the April 26-

27, 2004 papers submitted by QAD, (i.e. Exhibit A of QAD's Complaint itself, and the

allegations of oral extensions and subsequent alleged cancellation, allegedly evidenced

by Exhibit B of the Complaint itself), THAT there was NO written instrument expressly

agreed to between the parties.  QAD now confirms this conclusively in its April 26-27,

2004 motion papers.  Notwithstanding the same, QAD makes claims to copyrights in

such localization works by virtue of the fact that it "commissioned" work to Vedatech

Parties.  There is an additional question as to whether the translation or any

"supplemental work" is covered by the "work for hire" doctrine.  Without any claims for

copyright, the issues regarding "commissioning" may not fall within the ambit of the

Copyright Act.  But with specific relief sought by QAD on the basis that (a) it does own

copyrights to the localized software and that (b) such a copyright arises out of the "work

for hire" doctrine, involves the construction, interpretation and judgment on the possible

remedies provided under the Copyright Act and the provisions of 17 U.S.C. §§ 101 et

seq.  In addition, the new clarifications provided by QAD in its April 26-27, 2004 motion

papers and memoranda confirm the need for the interpretation and construction of the Berne Convention, and reveal for the first time the fact that Vedatech parties have copyright infringement against QAD Inc. for developing "new software" on the localization based on the "reengineering" undertaken by its Australian subsidiary.

118.    Further provisions regarding "work for hire" is provided for in 17 U.S.C § 201 (b), which states that:

> (b) Works Made for Hire. –
>
> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

119.    It is clear from the March 11, 2004 interrogatory responses and the further clarifications provided in the April 26-27 motion papers and memoranda, that QAD is claiming that it is in the position of an "other person for whom the work was prepared". Thus, the nature of the contractual relationship between the parties and the construction of this statute also becomes relevant for the resolution of QAD's claims against the Vedatech parties.  It is Vedatech Parties' contention that QAD is mistaken because 17 U.S.C §201(a) is dependent on a work being considered to be a "work for hire" per the definition in 17 U.S.C. §101.  This dispute will involve an interpretation of the construction and meaning of the Copyright Act and the provisions of 17 U.S.C.

120.    If the copyright in the "localizations" and other translation work undertaken by Defendants were to vest in Vedatech Parties as per § 201 (a), then the issues of transfer of ownership under § 201 (d) or otherwise are also are in dispute.  There are numerous other issues that come up in the dispute involving copyright, such as what

portions of the work undertaken by Vedatech would be considered as a "joint work" and what are "derivative works" under 17 U.S.C. § 101, all of which are in dispute and would have to be resolved before any relief can be granted to QAD as pleaded in its Complaint.[11]

121.    §501 defines "copyright infringement as violation of any of the rights enumerated in §§ 101 through 121.  One other way of characterizing QAD's claims in ¶¶ 21 (L) and (H)-(K) of the Complaint is that QAD wishes to state various state law claims on the basis that in addition to VEDATECH's assertions themselves being infringement of QAD's copyrights, the fact that VEDATECH allegedly asserted to customers and third-parties that *QAD was violating Vedatech's copyrights* is actionable under these state law causes of action.  In other words, it has become clear that QAD essentially claims that it was improper for VEDATECH to assert that *VEDATECH had copyrights to the "localized" software*.  Especially the Trade Libel cause of action will turn upon the truth of this statement, and the truth will depend on VEDATECH's rights under the Copyright Act / 17 U.S.C §§ 101 seq."  Accusing Vedatech of "improperly asserting ownership" to copyrights is the same as saying that Vedatech was improperly accusing QAD of copyright infringement.

122.    The resolution of QAD's claims thus require the interpretation and construction of the provisions of 17 U.S.C §§501 et seq. regarding copyright infringement also.  Did or did not Vedatech's alleged assertions regarding copyright have a valid basis in truth? [Since "truth" is a proper defense to any state law action for "Trade libel".]  The doctrine of complete preemption is sufficient to provide federal jurisdiction.

---

[11]    QAD, in collusion with Vedatech's insurers St.Paul, has been taking various actions AFTER the removal to Federal Court in order to try to defeat Federal Jurisdiction. The issue of subject matter jurisdiction is determined as of the time of removal, viz., on March 15, 2004 and cannot be taken away by QAD by manipulative tactics since then.

123.     Thus, some or all of the causes of action mask a copyright infringement action as a state law cause of action and others (such as Trade Libel) additionally involve elements of defense that in any event result in complete preemption of the cause of action.  See 28 U.S.C. § 1338.

124.     In addition, as detailed above, resolution of QAD's claims also require the interpretation of, and application of the Berne Convention, which is a multinational treaty to which the United States is a party.  Under 28 U.S.C. 1331, this clearly results in QAD's claims "arising out" of treaties.  Such treaties, in any event, under the Constitution become the "supreme law" of the United States.   State law claims that necessarily sound in copyright are preempted by federal copyright law and may be removed on that basis.    Here, QAD's claims are necessarily predicated on QAD's claim to own the copyright in and to certain software or source code and that defendants harmed its copyright ownership interests by improperly claiming copyright or ownership of the same software or source code.  Copyright interests in software and source code are clearly within the subject matter of copyright.   QAD essentially seeks to "quiet title" in and to its asserted copyright interest in the software and source code.  Accordingly, QAD is seeking to use state law causes of action to establish and protect rights that are qualitatively equivalent to copyright.

## INTRA-DISTRICT ASSIGNMENT STATEMENT, LR 3-5(b)

125.     This Action was currently pending in California Superior Court for Santa Clara County, and after the recent remand is again pending in the same Court.

126.     The removal statute provides that when a case is removed to federal court, the defendant "shall file in the district court of the United States for the district **and division** within which such action is pending a notice of removal…."  28 U.S.C. § 1446(a) (emphasis added).  This action is pending in Santa Clara County Superior Court which is within the San Jose Division of the Northern District of California.  LR 3-2(e).

## NOTICE OF REMOVAL IS TIMELY FILED

127.    Defendants hereby file this Notice of Removal within thirty (30) days of the date when they first received any process, pleading or other paper from which it could be first and unequivocally ascertained that the case is or had become removable. Alternatively, QAD has waived any objection it has to the 30-day procedural requirement by requesting substantive relief from the Federal Court in the form of dismissals etc. in its "preliminary response" during the prior removal to Federal Court.

## Joinder of All Defendants

128.    ALL Defendants in the main action being removed, CV 771638, (i.e Vedatech Inc. and Subramanian) and the additional true defendants of the Consolidated Action, CV 784685 (i.e. Vedatech K.K., in addition to Subramanian and Vedatech Inc.,) join this Notice of Removal.  Thus, the counterdefendants in the consolidated action also join in this Notice of Removal.  Since the main action being removed, CV 771638 is the original and earlier filed action, and CV 784685 was later consolidated *into* the first action, the original (third-party) defendants have not been requested to join in the removal.  It should be noted though that QAD Japan Inc., a defendant in CV 784685 originally removed the second consolidated case to this same District Court.

## A question of Delay

129.    In their various inflammatory allegations in the papers filed on April 26-27, 2004, QAD and its counsel Mr William Connell accuse removing parties of intending to cause delay and stress the fact that a previous May 2004 trial date in State Court was lost.  The real reason for the cumulative delay to-date in these proceedings can be gleaned from a simple survey of the answers to the latest interrogatories propounded by removing parties and answered by QAD on March 10, 2004 (received on March 11, 2004, <u>Exhibit</u>

E, Tab-9.1):  the real reasons are QAD's refusal to provide any meaningful discovery and its incredible stonewalling and insincere responses.

130.    Apart from having completely ignored the Magistrate Judge's discovery deadline in Oct 1999 when the lead case was venued in Federal Court, QAD to this day refuses to provide basic email archives.  In the March 10, 2004 interrogatory responses, QAD states at <u>Exhibit-E, Tab-9.1, p.2, para.2</u>., as a general objection to all questions, incredibly that "*QAD notes that it has not fully completed its investigation and discovery of the facts relating to the case and has not completed all preparation for trial*."  QAD has made detailed allegations about issues relating to intellectual property and has itself produced documentary evidence about the "reengineering" of Vedatech developed software by QAD's Australian subsidiary.

131.    In spite of this QAD claims in its March 10, 2004 responses that Vedatech parties have "*not provided QAD with access to said INTELLECTUAL PROPERTIES.  ... ... However, QAD is unable to respond to the specific requests for information contained in this Interrogatory by virtue of the fact that neither Mr Subramanian nor Vedatech provided copies of the subject properties to QAD despite repeated requests for it*."  This is an outright misrepresentation, as we know that QAD had access to Vedatech software because it was discussing "reengineering" of the same including whether to delete "labels" within such software, with its Australian subsidiary.

132.    It is clear that the parties were not ready for trial, nor are ready for trial because of QAD's continuing refusal, and consequently will not be ready for trial in any time soon.  QAD's desire in rushing to trial is to make sure that Vedatech parties have no chance of proving their affirmative claims or being able to prove their innocence.  The extremely prejudicial and false and scandalous additional "details" and "facts" and "background" that QAD provides in its April 26-27 papers also illustrate the hollow nature of QAD's fully "executed" "settlement agreement" with St.Paul, the insurer for Vedatech parties.  If the agreement is truly fully executed and signed in good faith, QAD

would desist from making inflammatory and false statements that it has apparently settled for a payment of money from the insurer, whose main motivation is to avoid defense costs and weaken Vedatech's legal resources to pursue the Vedatech parties' bad faith claims against the insurer (St.Paul) for, *inter alia*, non-payment of past defense costs.

## Issues regarding an "extra element"

133. In fact, under the doctrine of complete preemption, as noted above, it is not relevant that there are alternate routes based on other allegations to proving or establishing a state law cause of action. Furthermore, QAD claims that the cause of action for fraud, for example can never be preempted, quoting a general section of <u>Nimmer on Copyrights</u>.

134. Further study of <u>Nimmer</u> and the authorities show that this is not true and this general statement is qualified in many ways. In cases, such as herein, where the misrepresentation itself is related to an act forbidden by the Copyright Act, and other cases where the misrepresentations themselves are sounding in infringement, the "misrepresentation" no longer is the "extra element" that is needed to prevent a complete preemption. Thus, the authorities concede and in fact clearly establish that fraud can be preempted by the Copyright Act in cases similar to this one.

135. Each and every one of the causes of action alleged herein have been found to be capable of complete preemption. Furthermore, contrary to QAD's claims in the motion papers of April 26-27, 2004, the "extra element" is NOT the presence of other allegations, or an infinity of scandalous and horrible sounding false accusations that may reach the same state law causes of action.[12] The "extra element" has to do with the actual

---

[12] In his enthusiasm to show how many other issues there are in the Complaint other than copyright issues, Mr William Connell, counsel for QAD goes overboard in embellishing and detailing (in much more detail than is to be found in any of the previous allegations in the Complaint or the interrogatory responses) various scandalous allegations for which he has been refusing to provide simple support by releasing his email archives. In fact, if even *a fraction* of such claims were true, QAD would have

legal elements that constitute, under State Law, such a cause of action for, say, breach of

fiduciary duty, and further its interplay with the Copyright related actions alleged by

QAD. Each cause of action in QAD's claims, individually satisfy this test for complete

preemption. To the extent that any one of them do not, then they are removable under the

provisions of 28 U.S.C. §1367 or §1441(c).

## Reasons for Removal / Motivation of Removing Parties

136.    Vedatech parties believe that the original complaint is "artfully pleaded"

to obfuscate QAD's true intention of claiming copyrights in the localized (Japanized)

software that was developed by Vedatech and in other copyrightable material (such as

translations) that was developed by Vedatech. From the first interrogatories that were

served in Federal Court in June/July 1999, Vedatech parties have attempted to ascertain

the true nature of QAD's complaint and the issues surrounding claims regarding

"intellectual property" and the issues of "ownership" regarding the same.

137.    Vedatech parties also believed that they may have claims for copyright

infringement against, at a minimum, agents or subsidiaries of QAD Inc., but also QAD

Inc., itself. Efforts to get discovery regarding this over the last several years have also

consistently failed, as QAD, in violation of Magistrate Judge Patricia Trumbull's order in

Oct 1999 and since then, has stonewalled and refused to provide basic information such

as email archives and names of their CGL insurance carrier.

138.    It is in this context that when the interrogatory responses detailing QAD's

true purpose in alleging matters regarding its "intellectual property", clarified that the real

issue was about copyrights-based claims, Vedatech parties promptly removed the

consolidated action.

---

rushed to produce all of its email archives and been ready to prove these one way or
another. Instead, QAD is apparently ready for trial, but not ready to produce its email
archives, or for that matter the name of its CGL (Commercial General Liability) insurer.

139.    If, as Vedatech parties now believe, one possible reading of the prior remand order dated April 29, 2004, is that the answer of March 10, 2004 (received on March 11, 2004), even taken together with the original complaint and the subsequent interrogatory responses is not sufficient to raise a federal question [Remand Order at Exhibit H, Tab-19, Line-1], and that the prior removal was untimely to the extent that it was premature, then Vedatech parties believe that the detailed NEW and further allegations and affirmative claims that QAD has made through its motions / briefs / memoranda and material submitted after March 15, 2004, and in the April 26-27, 2004 period provide a firm basis for supporting the various logical conclusions Vedatech parties sought to derive from the March 11, 2004 revelation regarding "copyrights".

140.    It is Vedatech parties' intent that ALL issues between the parties be resolved in a single forum and that that would constitute the most judicially efficient path to take.  The copyright infringement counterclaims of Vedatech, the viability of which is now confirmed by QAD's new revelations that it actually developed new localized software after the "reengineering" attempts of its Australian subsidiary, can now be properly heard along with the removed claims.

141.    Unlike the first time around, there is no trial date set now that is being upset.  On March 25, 2004, QAD has purported to enter into a "settlement" with St.Paul, the insurers of removing parties and has been attempting to defeat federal jurisdiction by trying to dismiss its claims.  Vedatech parties have challenged this "settlement" in an original action in Federal Court now on the docket as C-04-01249 VRW.

142.    Vedatech parties believe that the motivating factors for this "settlement" have to do with secret collusion between QAD and St.Paul in trying to weaken Vedatech's legal position and defeat federal jurisdiction and try to rush through an early trial in the QAD case so that there is no time for Vedatech parties to compel QAD to produce its email archives or even basic information such as the name of QAD's CGL (Commercial General Liability) carrier.

143.     St.Paul is trying to leverage this event to gain an advantage in the bad faith action that Vedatech parties initiated as a cross-complaint to St.Paul's declaratory relief action started by St.Paul in February 2002.  This insurance action is currently removed to Federal Court under C-04-01403 SC and noticed as a related case to C-04-01249 VRW.

144.     Vedatech parties believe they will soon be able to file a motion for leave to amend their counterclaims to include copyright infringement claims based on new information revealed by QAD (through its counsel Mr William Connell) in their April 26-27, 2004 motions, briefs, memoranda and other papers and any additional discovery if necessary.

145.     All of the events underlying such copyright infringement actions form the same case or controversy under Art.III of the United States Constitution along with this removed consolidated case.  It is in the interests of fairness and justice that all of this be heard together given that removal jurisdiction is proper. [13]

## DEMAND FOR JURY TRIAL

146.     To the extent necessary, Defendants now again demand that this consolidated action be tried to a jury as provided by Fed.R.Civ.P. 38(b).

///

---

[13]     On the other hand, QAD parties and Mr William Connell, counsel for QAD parties, clearly see an advantage in withholding basic information such as email archives, and in depending on collusive agreements with St.Paul, the insurer, to weaken Vedatech in parallel by withholding fee reimbursements etc., in dismissing their affirmative claims so that St.Paul can have an excuse not to pay for any defense costs, and in relying upon the current State forum to push through an early trial under such circumstances.  QAD's misguided and improper enthusiasm for the State forum because of their belief that such a plan could be rushed through the current State forum is no reason to entertain any objections to the removal or cast any doubts about the sincerity of the removal.

Dated: May 4, 2004                    LAW OFFICES OF JAMES S. KNOPF


By _____
    CHRISTINA GONZAGA
    Attorneys for
    VEDATECH INC. AND VEDATECH K.K.



Dated: May 4, 2004


By _____
    MANI S. SUBRAMANIAN
    PRO SE.